## STATE OF CONNECTICUT *v.* LEVESTER MYERS (11448)

PETERS, PARSKEY, SHEA, GRILLO and SPADA, Js.

458

Argued April 11—decision released June 26, 1984

*Joseph G. Bruckmann,* for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Kenneth Leyba,* legal intern, for the appellee (state).

PETERS, J. The principal issue in this case is whether the defendant's conviction must be reversed because the New Haven police department's routine erasure of

a tape recorded statement of the complaining witness foreclosed strict compliance by the state with the disclosure provisions of Practice Book § 752.

The defendant, Levester Myers, was charged by substituted information with sexual assault in the first degree, in violation of General Statutes § 53a-70 (a)[1] and robbery in the first degree, in violation of General Statutes § 53a-134 (a) (3).[2] The jury returned verdicts of guilty on both counts. After denying the defendant's motions for judgment of acquittal and for a new trial, the trial court rendered judgment in accordance with the jury verdicts. The defendant appeals from the judgment of conviction.

From the evidence presented at trial the jury might reasonably have found the following facts. On the afternoon of Sunday, March 22, 1981, the victim left her apartment on the third floor of a high rise apartment building in New Haven to go grocery shopping. After she had been waiting for the elevator for several min-

---

[1] "[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[2] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

utes she noticed the defendant, a young black man, exit a stairway at the end of the hall and walk the length of the hall to the elevator where she was standing. Something about the defendant made the victim feel uneasy and she decided that she did not want to ride down in the elevator with him. She turned around and walked down the hall toward the stairway from which the defendant had come. As she walked, the defendant called out to her in a mocking tone, "What's wrong? Are you okay?" The victim turned and looked at the defendant but did not respond. She continued to the stairway and descended as quickly as possible.

When the victim got to the second floor landing she felt a hand grab her from behind and she screamed. The defendant told her that he had a knife and that she would not get hurt if she was quiet. The victim screamed once more and then fell silent when she felt the point of a knife at the back of her neck. The defendant told the victim to give him her money. The victim had no cash, but offered the defendant her wallet, her credit cards and her checkbook. The defendant then told the victim that he would rape her, which he did. After the defendant had completed his sexual assault, he ordered the victim not to come after him. Taking her wallet, he fled.

The victim had observed the defendant for several minutes in bright light as he walked from the stairway to the elevator on the third floor. She did not see him during the course of the subsequent assault in the stairway because he was behind her for much of the time and because her eyes were closed. The victim was absolutely positive, however, that the man whom she had observed in the hallway was the man who had assaulted her on the stairs, because on both occasions the defendant spoke in the same distinctive mocking tone of voice.

After the defendant had fled, the victim waited for several minutes on the stairway landing and then returned to her apartment. She did not immediately report the incident to the police because she feared that the defendant would return. Later, at approximately 1 a.m. the following morning, the victim anonymously reported the incident to the police. She also reported the attack to a counselor in the rape crisis unit at Yale-New Haven Hospital.

On Tuesday morning, March 24, 1981, having learned the victim's identity from information provided by the rape crisis unit and her own anonymous telephone call, two New Haven police officers interviewed the victim at her office. At that time she described the incident to the police and gave a description of the defendant. She did not then give a written statement or return with the officers to the police station to view photographs.

On March 25, 1981, the victim did go to the police station to attempt a photographic identification. She viewed approximately seventy-six photographs of young black males, most of which were arranged in pairs in plastic trays. The remainder of the photographs, including the defendant's, were loose in a pile on the investigating detective's desk. The victim positively identified the defendant's photograph as soon as she saw it, but, still undecided about pursuing a formal complaint, she refused to sign the photograph or to give a written statement at that time. Five days later, on March 30, 1981, the victim returned to the police, signed a written statement describing the offense and indicated her positive identification of the defendant by signing the photograph. The photograph and testimony concerning the victim's photographic identification were admitted at trial. In court, the victim also positively identified the defendant as her assailant.

The defendant presented an alibi defense. Through his own testimony and that of two security guards, he claimed that on the date and at the time of the offense he had been shoplifting at Macy's department store in New Haven in order to support his heroin habit.

On appeal the defendant claims that the trial court erred (1) in denying his request for a continuance; (2) in denying his motion to suppress the victim's photographic and in-court identifications; (3) in refusing to strike the victim's testimony pursuant to Practice Book § 755 when the state failed to produce her previous statements; and (4) in denying his motions for judgment of acquittal. We find no error.

I

The defendant's first claim of error argues that the trial court abused its discretion when it denied his request for a continuance. We disagree.

The defendant had been represented by the office of the public defender from April 3, 1981, until February 9, 1982, when Attorney John J. Buckley was appointed as a special public defender. On Friday, March 12, 1982, after selection of the jury, Attorney Buckley requested a one week continuance in order to prepare a defense. He claimed that he had been constantly on trial in other cases since his appointment and that as a result he had not had an adequate opportunity to confer with the defendant or to prepare the case. The trial court denied Attorney Buckley's motion and ordered him to proceed that day with the motion to suppress identification. After denying the motion to suppress, the court ruled that the jury trial would not go forward immediately but would be continued until the following Monday. On Monday morning, March 15, 1982, Attorney Joseph Bruckmann appeared on behalf of the defendant in lieu of Attorney Buckley and requested a two day continuance. The trial court granted the continuance on the

condition that it take effect after the testimony of the victim, who was then present in court and ready to testify.

The defendant acknowledges that the decision to grant or deny a continuance lies within the discretion of the trial court. *State* v. *McKnight,* 191 Conn. 564, 576–77, 469 A.2d 397 (1983); *State* v. *Jeustiniano,* 172 Conn. 275, 284, 374 A.2d 209 (1977); *State* v. *Bethea,* 167 Conn. 80, 84, 355 A.2d 6 (1974). Our inquiry on appeal is limited to whether the trial court abused its broad discretion. We do not decide whether we would, in the trial court's place, have reached a different conclusion.

While we agree with the defendant that he was facing serious charges and that there was no evidence that either of his attorneys requested a continuance for the purpose of delay, these circumstances do not in themselves warrant a finding that the trial court abused its discretion. Nor does the substitution of counsel at the eleventh hour automatically entitle the defendant to a continuance. "It must be shown that the trial judge acted arbitrarily and substantially impaired the defendant's ability to defend himself, before an appellate court will conclude that the trial judge abused his discretion." *United States* v. *Ellenbogen,* 365 F.2d 982, 985 (2d Cir. 1966), cert. denied, 386 U.S. 923, 87 S. Ct. 892, 17 L. Ed. 2d 795 (1967); see *Ungar* v. *Sarafite,* 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921, reh. denied, 377 U.S. 925, 84 S. Ct. 1218, 12 L. Ed. 2d 217 (1964).

The defendant has not alleged any specific prejudice to his defense as a result of the trial court's denial of his requests for a continuance. Both attorneys who appeared on the defendant's behalf fully cross-examined the state's witnesses and Attorney Bruckmann presented

a thorough, well prepared defense at trial. Under these circumstances, we find no merit to the defendant's first claim of error.[3]

## II

The defendant next claims that the pretrial photographic identification procedures employed by the police were so unnecessarily suggestive that the admission at trial of the victim's in-court identification of the defendant and of testimony concerning her previous photographic identification violated his right to due process of law. We disagree.

It is well settled that in order to succeed on a motion to suppress identification evidence, the defendant must prove (1) that the identification procedures were unnecessarily suggestive; and (2) that the resulting identification was not reliable in the totality of the circumstances. *State* v. *Vass,* 191 Conn. 604, 608–609, 469 A.2d 767 (1983); *State* v. *McKnight,* supra, 570; *State* v. *Doolittle,* 189 Conn. 183, 190, 455 A.2d 843 (1983); *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980).

The defendant's argument that the identification in this case was unnecessarily suggestive rests on his contention that the victim made only a tentative identification of the defendant's photograph on March 25, 1981. The defendant then argues that the subsequent

---

[3] The out-of-state cases on which the defendant relies are not to the contrary. All involved some demonstrable prejudice to the defendant resulting from the denial of a continuance. See, e.g., *People* v. *Mendez,* 260 Cal. App. 2d 302, 306, 67 Cal. Rptr. 31 (1968) (pro se defendant incarcerated and not permitted telephone access to witnesses); *Lorenz* v. *People,* 159 Colo. 494, 496–97, 412 P.2d 895 (1966) (motion for new trial disclosed exculpatory evidence not available to attorney appointed one day before trial); *People* v. *Jefferson,* 35 Ill. App. 3d 424, 426, 342 N.E.2d 185 (1976) (trial commenced before state had complied with discovery order).

The defendant's argument is also weakened by his failure to object that the continuance which was afforded to Attorney Bruckmann was insufficient and by his failure to file any further motions for continuance.

procedure on March 30, 1981, was unnecessarily suggestive because the victim viewed the defendant's picture alone, with the knowledge that the police believed him to be guilty, rather than viewing the picture in comparison with others in the context of an array or display tray. We find this claim unpersuasive because its premise is unsupported in the record.

At the hearing on the defendant's motion to suppress, both the victim and Detective Ralph DiNello, the investigating officer, testified that the victim had immediately and categorically identified the defendant's photograph on March 25, 1981, when she first examined it on DiNello's desk. She was absolutely sure that the man in the photograph was her assailant and she started to shake. The only reason that she did not document her identification by signing the photograph at that time was that she was still too terrified of reprisal by the defendant to initiate a formal complaint. The defendant does not argue that the initial photographic display was suggestive. Accordingly, the trial court did not err in denying the defendant's motion to suppress.

## III

The defendant's principal claim of error is that his conviction must be reversed because the state failed to comply with the disclosure provisions of the Practice Book. Immediately after the victim had completed her direct testimony, defense counsel conducted a short voir dire examination to determine what prior statements she had given to the police and to the state's attorney. The defendant then requested production of all of the victim's prior statements pursuant to Practice Book § 752.[4] In response the state provided the defendant with copies of the victim's formal written

---

[4] "[Practice Book] Sec. 752. —— ——PRODUCTION FOLLOWING TESTIMONY

"After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state

complaint and a police report prepared by Sergeant Gerald Antunes, which described his receipt of the victim's anonymous telephone call shortly after the offense.

The state did not produce certain other statements claimed by the defendant. These fall into three categories: (1) the tape recording of the victim's telephone call; (2) the rough notes taken by the investigating officer, DiNello, during his interviews with the victim; and (3) the state's attorney's notes of his interviews with the victim. The defendant unsuccessfully moved to strike the victim's testimony pursuant to Practice Book § 755,[5] because of the nonproduction of these statements. Although we agree with the defendant that the state's failure to preserve and produce the victim's tape recorded statement violated our rules of practice, we find the violation harmless on the facts of this case.

The state concedes that the tape recording of the victim's first anonymous telephone contact with the police was a statement subject to disclosure under § 752 for use by the defendant in cross-examination. The recording could not be produced, however, because it had been erased pursuant to the standard practice of the New Haven police department. At the time in question it was the practice of the police department routinely to record all in-coming telephone calls, to retain the tape cassettes for approximately thirty to sixty days and then to erase and reuse them. This procedure was fol-

or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

[5] "[Practice Book] Sec. 755. —— ——FAILURE TO COMPLY WITH ORDER

"If the prosecuting authority elects not to comply with an order of the judicial authority to deliver to the defendant any statement of a witness who has testified or such portion thereof as the judicial authority may direct, the judicial authority shall strike from the record the testimony of the witness, and the trial shall proceed unless the judicial authority, in his discretion, upon motion of the defendant, determines that the interests of justice require that a mistrial be declared."

lowed regardless of whether a tape contained calls related to a pending prosecution. According to the state, the destruction of the victim's statement by the police department does not warrant censure because the destruction was a matter of routine rather than an intentional concealment of evidence from the defendant. We cannot agree with this proposition.

In *State* v. *Shaw,* 185 Conn. 372, 385–87, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982), we considered a similar claim involving the loss of a witness' tape recorded statement. There was no evidence in the record from which it could be determined how the statement was lost. Id., 385. The police had obtained a second statement from the witness approximately one month after the first. The defendant was provided with a copy of the second statement, which, according to police testimony, was essentially the same as the missing statement. Id., 386–87. Under those circumstances we held that the trial court had properly denied the defendant's motion to strike the witness' testimony. We explained that " '[w]hether or not sanctions for non-disclosure should be imposed depends in large measure upon the extent of the Government's culpability for failure to make disclosable material available to the defense, on the one hand, weighed against the amount of prejudice to the defense which resulted, on the other.' " *State* v. *Shaw,* supra, 386, quoting *United States* v. *Miranda,* 526 F.2d 1319, 1324 (2d Cir. 1975), cert. denied, 429 U.S. 821, 97 S. Ct. 69, 50 L. Ed. 2d 82 (1976). In *Shaw* we found both halves of the balance opposed to the imposition of a sanction. The loss of the witness' first statement was unintentional and, in view of the availability of the second statement, did not cause any prejudice to the defendant.

This case presents a far more difficult question than *Shaw.* In this case it is conceded that a statement of

the state's principal witness was deliberately destroyed according to a long-standing policy of the New Haven police department, notwithstanding the pendency of serious criminal charges. It was foreseeable that production of this statement would be required in the event of a trial. The fact that the destruction was motivated by insensitivity to the policies underlying the Practice Book disclosure requirements, rather than by ill will toward this defendant, does not render the destruction innocent. We agree with the reasoning of the federal courts interpreting the Jencks Act[6] that ". . . a course of conduct is not necessarily reasonable merely because it is routine. . . . The Jencks Act was designed to insure that government witnesses could be impeached only with those statements which could 'fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations.' *Palermo* v. *United States,* [360 U.S. 343, 350, 79 S. Ct. 1217, 1223, 3 L. Ed. 2d 1287 (1959)]. That purpose is not served when a government agent summarizes a witness' statement in his report and destroys the verbatim statement. Whether or not . . . [the] conduct was routine, it was manifestly unreasonable in light of the expressed Congressional intent, and is no less a violation of the Jencks Act because it was pursued in good faith." *United States* v. *Carrasco,* 537 F.2d 372, 376 (9th Cir. 1976); see also *United States* v. *Bufalino,* 576 F.2d 446, 448–50 (2d Cir.), cert. denied, 439 U.S. 928, 99 S. Ct. 314, 58 L. Ed. 2d 321 (1978); *United States* v. *Bryant,* 439 F.2d 642, 650–53 (D.C. Cir.), appeal after remand, 448 F.2d 1182 (D.C. Cir. 1971); *Lee* v. *United States,* 368 F.2d 834, 837–38 (D.C. Cir. 1966).

---

[6] 18 U.S.C. § 3500. Our Practice Book §§ 748 through 755 are modeled after the federal act. See *State* v. *Anonymous,* 190 Conn. 715, 732, 463 A.2d 533 (1983); *State* v. *Gonzales,* 186 Conn. 426, 432, 441 A.2d 852 (1982).

Our determination that the erasure of the victim's tape recorded telephone call was unexcused does not, however, end the inquiry. We must consider whether the prejudice to the defendant resulting from the non-disclosure warrants the reversal of his conviction.[7] We conclude that it does not.

The defendant in this case had access to numerous other statements by the victim for use in cross-examination, including Antunes' report describing her initial anonymous telephone call. Antunes' report was prepared the same day that the call was received, prior to any other communications between the victim and any agent of the state. The descriptions of the offense and of the defendant contained in Antunes' report are entirely consistent with the victim's subsequent statements to DiNello and her testimony at trial. There is absolutely nothing in the record from which we can infer that the tape recorded statement might have contained any inconsistency. While we repeat that we do not countenance the destruction of verbatim statements, in the particular circumstances of this case, we find no error in the trial court's denial of the defendant's motion to strike the victim's testimony.

The defendant's remaining claims of nondisclosure are less substantial. Both claims are directed to the rough notes prepared by state officers during the course of their interviews with the victim. At trial the state justified its nondisclosure of these materials on the

---

[7] Since access to the statements of witnesses for the prosecuting authority is not a constitutional right; *United States* v. *Augenblick*, 393 U.S. 348, 356, 89 S. Ct. 528, 21 L. Ed. 2d 537 (1969), on remand, 509 F.2d 1157 (Ct. Cl.), cert. denied, 422 U.S. 1007, 95 S. Ct. 2628, 45 L. Ed. 2d 669 (1975); *State* v. *Pikul,* 150 Conn. 195, 202, 187 A.2d 442 (1962); the burden of showing prejudice rests on the defense. *State* v. *Anonymous (83–FG),* 190 Conn. 715, 735, 463 A.2d 533 (1983); *State* v. *Gonzales,* 186 Conn. 426, 436 n.8, 441 A.2d 852 (1982); *State* v. *Cooper,* 182 Conn. 207, 212, 438 A.2d 418 (1980); see also *California* v. *Trombetta,* 467 U.S. , 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984).

ground that DiNello's notes were no longer in existence and the state's attorney's notes were covered by the work product privilege. In this court, the state argues that the trial court was correct not to order production of the notes because the defendant did not make a sufficient showing that they were statements within the meaning of Practice Book § 749. We agree with the state's latter claim.[8]

Practice Book § 749 limits the disclosures governed by §§ 748 through 755 to two categories of materials: "(1) A written statement made by a person and signed or otherwise adopted or approved by him; or (2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement." As we recently held in *State v. Anonymous (83–FG)*, 190 Conn. 715, 734, 463 A.2d 533 (1983), a police officer's interview notes may be subject to disclosure for use by the defendant in cross-examining the witness, if the officer's notes meet either of § 749's alternate definitions of a statement. The notes may also be discoverable following the officer's own testimony if they are "signed or otherwise adopted." Id. The state's attorney's notes are similarly discoverable if they meet the Practice Book definition.

---

[8] As we have held above, the routine destruction of statements that would otherwise be subject to disclosure under Practice Book § 752 cannot excuse their nondisclosure.

The state's claim that the attorney work product privilege exempts from disclosure witness statements taken by the state's attorney rather than the police is equally without merit. Practice Book § 746 (2) extends a work product privilege to "[s]tatements made to prosecuting authorities or law enforcement officers *except as provided in Sec. 748.*" (Emphasis added.) Those statements that do fall within the ambit of § 749 must be disclosed. The Supreme Court of the United States has similarly rejected a prosecutor's work product exception to the Jencks Act. *Goldberg v. United States*, 425 U.S. 94, 102, 96 S. Ct. 1338, 47 L. Ed. 2d 603 (1976).

The defendant contends on appeal that DiNello's notes should have been produced, following the victim's testimony, either because they were a substantially verbatim recital of the victim's words or because they were adopted by the victim as correct. The record does not support these claims. The victim testified on voir dire that DiNello took no notes at all at any of his meetings with her and that she gave him no information other than that contained in her signed written statement. DiNello testified that during his initial interview of the victim in her office he did take notes which pertained to the victim's description of her assailant. He testified further that he went back over the description with the victim and that she agreed that it was accurate. There is absolutely no indication, however, that DiNello recorded the victim's words verbatim. Nor does the fact that the victim verified the general accuracy of the description justify the conclusion that she adopted the officer's notes as her own written statement. See *Goldberg* v. *United States,* 425 U.S. 94, 110 n.19, 96 S. Ct. 1338, 47 L. Ed. 2d 603 (1976).

The defendant argues in the alternative that DiNello's notes were subject to disclosure as a statement of DiNello following his direct testimony. DiNello testified that he took sparse, informal notes on scraps of paper and that he later incorporated all of his observations in his official police report, a copy of which was provided to the defendant. The notes were not signed and the record does not support the defendant's claim that they were "otherwise adopted." See *State* v. *Anonymous (83–FG),* supra, 734. The trial court did not err in refusing to order the production of these notes.

There is even less support in the record for the defendant's claim with respect to the state's attorney's notes. The victim testified that she met three times with the state's attorney or his representative and that an interviewer took notes on each occasion. She testified,

however, that the state's attorney never asked her to verify the accuracy of the information he was recording because "it was assumed on both sides that it was accurate." Under the circumstances, the victim cannot be said to have adopted the state's attorney's notes as her own. Accordingly, the trial court did not err in declining to order the production of the state's attorney's notes.

## IV

In the defendant's final claim of error, he argues that the trial court erred in denying his motions for judgment of acquittal. We disagree.

At the close of the state's evidence, the defendant moved for a judgment of acquittal on the ground that there was insufficient evidence to prove that it was he who had committed the offense. The defendant argued that because the victim's identification of her assailant as the man whom she had seen previously in the hallway rested solely on a voice comparison; that because the victim had described the man in the hall as clean shaven when the defendant had a mustache at the time of the offense; and that because the circumstantial evidence corroborating the identification was unpersuasive, the evidence of identity was insufficient as a matter of law. The trial court denied the motion.

After the defendant had completed his own case, he renewed his previous motion for judgment of acquittal and argued, in addition, that the alibi evidence that he had presented was so strong that it raised a reasonable doubt as a matter of law. The defendant had testified that he was a heroin addict and that he supported his habit by shoplifting. The defendant testified further that on the date of the offense he needed a fix and had spent the entire afternoon shoplifting at Macy's department store in New Haven. In addition to his own testimony the defendant introduced the testimony of two

Macy's security guards who remembered seeing the defendant in the store on the date and at the time of the offense and who corroborated the defendant's description of his interactions with them. He also introduced copies of the department store's security records, which reflected that the only individual stopped for shoplifting in the store that day was the person with whom the defendant claimed to have been shoplifting and who the defendant testified was caught by the Macy's guards.

The defendant contends on appeal that the security guards who testified in support of his alibi were credible witnesses who had no motive to falsify their testimony in his behalf, and that the department store security records supported the witnesses' memories. He claims, therefore, that this evidence raised a reasonable doubt of his guilt as a matter of law.

The defendant misconceives the scope of our factual inquiry on appeal. The credibility of witnesses is a matter to be resolved solely by the jury. *In re Juvenile Appeal (83-EF),* 190 Conn. 428, 439–40, 461 A.2d 957 (1983); *State* v. *White,* 155 Conn. 122, 123–24, 230 A.2d 18 (1967). If there is any reasonable way that the jury might have reconciled the conflicting testimony before them, we may not disturb their verdict.

There was testimony before the jury that the victim's apartment was not far from Macy's department store. Although the defendant himself testified that he was at Macy's all afternoon, the guards testified only that he was seen at noon when the store opened, sometime between 3:15 and 3:30 p.m., and sometime after 4 p.m., when his friend was brought to the security office. The victim testified that the offense took place between 3 and 3:30 p.m. We note that had the victim mistakenly placed the offense too late in the day, or had the guards erred in placing him at the store too early, the defend-

ant might have committed the offense before returning to Macy's. In addition, we note that it was not the defendant's name that appeared in the store records, but an alias used by his friend. While the guards claimed clear recollections of an incident in which the defendant repeatedly interrupted their interrogation of his friend, they might have mistakenly attached those memories to the single arrest that took place on the date of this offense. Such factual questions cannot be resolved by this court on appeal. Under the circumstances of this case we cannot agree with the defendant that no reasonable jury could have found him guilty beyond a reasonable doubt.

There is no error.

In this opinion the other judges concurred.