STATE OF CONNECTICUT *v.* HERIBERTO CORIANO
(4900)

BORDEN, BIELUCH and S. FREEDMAN, Js.

Argued May 5—decision released September 1, 1987

*Elsa M. Calderon,* assistant public defender, for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Michael Lawlor,* former assistant state's attorney, for the appellee (state).

S. FREEDMAN, J. After a trial to a jury on charges of burglary in the third degree in violation of General Statutes § 53a-103 and larceny in the third degree in violation of General Statutes § 53a-124, the defendant was acquitted of larceny in the third degree but convicted of burglary in the third degree. He appeals from that conviction. This appeal generates five issues. It asks whether the court erred (1) in refusing to strike testimony of the complainant because the police erased a recording of his emergency call reporting the crime, (2) in denying the defendant's motions for mistrial, (3) in denying the defendant's motion for judgment of acquittal, (4) in admitting evidence of an act of prior misconduct for the purpose of impeaching the defendant, and (5) in its jury instructions on the crime of burglary and the use of fingerprint evidence. We find no error.

The jury could reasonably have found the following facts. On December 17, 1984, the victim, Dean Andrews, following his usual routine, left his home between 7 and 8 a.m. His house was fronted by a porch and had double-hung windows on either side of the front door, both covered by storm windows. Because of debris left in

front of the lefthand window, it had been inaccessible from the outside since Labor Day of 1984.

Returning home that evening, Andrews saw that someone had made a path through the debris to the window. There were markings on the storm window, and its glass and the glass of the inner window were both broken. Some large pieces of broken glass were lying around. The telephone inside the house was ripped from the wall. Andrews' revolver and rifle were missing. Andrews, using a neighbor's phone, then called the police to report a burglary. Officer Herman Badger responded to the call approximately forty-five minutes later. Badger put six pieces of broken glass into a plastic bag and took them to police headquarters where they were checked for fingerprints. One piece of glass had three fingerprints on it, two on one side and one on the other.

At a later date, Andrews informed the police that the defendant, a former employee, could have been responsible for the incident. He had been at Andrews' house the Friday after Thanksgiving, 1984, and also lived with a woman who sometimes worked for Andrews as a house cleaner. Andrews had fired the defendant from his employment on December 8, 1984. The defendant had previously filed a workers' compensation claim against Andrews based on a back injury suffered at his place of employment. Andrews also told the police that other items had been taken besides those already reported, but that his insurance company had paid him for them.

Comparing the defendant's prints with those from the broken glass, the police determined that two prints on one side of the glass matched the defendant's index and middle .fingers and the print on the other side matched the defendant's thumb. A police expert was

able to conclude, on the basis of all the evidence, that the prints were placed there at the same time the glass was removed.

The defendant testified and presented a defense of alibi. He stated that while doing yard work the day after Thanksgiving he was bothered by back pain and leaned against the window in question, touching it. He said that later that day he was inside the house and leaned on the inside of the window while looking out, again touching it. He stated he never opened the inside window or the storm window. He further stated he was home in bed the entire day on December 17, 1984, at the suggestion of a doctor, because of back pain. Sonia Figueroa, with whom he lived, testified in corroboration of his alibi.

During the trial, the defendant's veracity was impeached by the state by evidence that he had lied under oath in a prior legal proceeding. The defendant responded that he was without an interpreter and had not understood the judge's questions at that proceeding or the proceeding itself. The defendant also attempted unsuccessfully to impeach the character of Andrews for truthfulness.

Testimony at trial further revealed that the New Haven police had erased a tape recording of the victim's emergency call reporting the burglary.

I

Relying on *State* v. *Myers,* 193 Conn. 457, 467–68, 479 A.2d 199 (1984), and Practice Book §§ 748 et seq., the defendant claims that destruction of the victim's recorded telephone call, which he maintains was a "Jencks statement,"[1] deprived him of his constitutional

---

[1] "Practice Book § 749, which defines the term 'statement,' tracks substantially the Jencks Act definition of that term. See 18 U.S.C.A. § 3500 (e)." *State* v. *Hinton,* 196 Conn. 289, 300, 493 A.2d 837 (1985).

right of confrontation. He argues that the recording could have contained inconsistent impeachment material. We cannot agree. The right under the rules of practice to statements of witnesses after direct examination is not a right of constitutional magnitude. *United States* v. *Augenblick,* 393 U.S. 348, 356, 89 S. Ct. 528, 21 L. Ed. 2d 537 (1969), on remand, 509 F.2d 1157, (Ct. Cl.) cert. denied, 422 U.S. 1007, 95 S. Ct. 2628, 45 L. Ed. 2d 669 (1975); *State* v. *Vessichio,* 197 Conn. 644, 661–62, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986). The defendant therefore bears the burden of showing prejudice. *State* v. *Myers,* supra, 469 n.7.

Under *State* v. *Myers,* supra, we do not condone the erasure of the recording. We are, however, required to determine whether it was sufficiently prejudicial to warrant reversal. Under the facts of this case, we conclude it was not. Unlike the anonymous call in *State* v. *Myers,* supra, which included a detailed description of the crime, Andrews' call in this case merely reported a burglary to the police and requested assistance. The defendant's counsel had full opportunity to cross-examine at length both the victim and the investigating officer to whom he spoke. Yet, nothing in the record even hints at the existence of impeachment material. The defendant's argument rests on speculation, failing to establish the weakest showing of prejudice.

The state, in a cogent public policy argument, urges us to carve out an exception to *State* v. *Myers,* supra, for emergency 911 calls. Despite the appeal of this argument, we decline to accept the invitation. Because the defendant failed to make any threshold showing of prejudice, we need not reach that question and leave it for another day.

## II

The defendant next argues that the trial court erred in refusing to grant a mistrial (1) for refusing a continuance to investigate newly discovered fingerprint evidence and for limiting his cross-examination of the complainant for bias, and (2) for the destruction of the recording of the complainant's telephone call. See *State v. Hill*, 201 Conn. 505, 510, 518 A.2d 388 (1986); *State v. Moye*, 199 Conn. 389, 395, 507 A.2d 1001 (1986).

Responding to the defendant's motion for discovery, the state agreed to allow inspection of all evidence, including fingerprints. At that time, the state's expert had located three prints on the broken glass, two of which he identified as belonging to the defendant. The defendant's expert had the opportunity to inspect these prints. Just before trial, the state's expert was able to identify the third print as that of the defendant's thumb. The defendant requested preclusion of the additional fingerprint evidence due to late disclosure; see Practice Book § 747; and alternatively requested a continuance for his expert to review the new conclusion. The court denied these motions. After the state's expert testimony was presented, the defendant asked for a mistrial, citing the failure to grant the continuance and the defendant's inability to cross-examine Andrews on bias, interest and motive.

The fingerprint evidence complained of by the defendant was seasonably made available to him after the original disclosure. The defendant's expert was thus able to inspect those prints and draw any conclusion from them he found reasonable. Since he already had the opportunity to view what the defendant later requested, the court's denial of a continuance was not an abuse of discretion. Moreover, nothing prevented the defendant from bringing his expert into the courthouse to look at the prints.

The record also indicates that the defendant's claim of bias by the victim was, in fact, explored on cross-examination by his counsel, and denied by the victim. Accordingly, the first motion for mistrial was properly denied.

We have already concluded that no error resulted from the police erasure of the telephone tape recording. Our review of the record confirms that the trial court did not abuse its discretion in failing to grant the defendant's second motion for mistrial.

### III

The defendant alleges that the court erred in denying his motion for judgment of acquittal after the verdict. Essentially, the claim has three prongs: (1) the verdict rested upon fingerprint testimony which cannot stand alone in the absence of evidence indicating that the prints were made at the time of the crime; (2) there was a reasonable hypothesis consistent with innocence concerning the fingerprints; and (3) the defendant's alibi defense, coupled with his explanation of when the fingerprints could have been impressed, created a reasonable doubt as a matter of law.

The defendant's first argument fails because the fingerprint evidence did not stand alone. See *State* v. *Thorpe,* 188 Conn. 645, 648–50, 453 A.2d 88 (1982). The defendant knew the victim's work habits; his friend worked in the house; the point of entry was inaccessible from the outside for a long period preceding the date of the crime; the window was protected by a storm window; the three prints were on the same piece of window glass; and the location of the three prints, namely, index finger and middle finger opposing the thumb near the end of the broken glass, allowed the state's expert to opine that they were all impressed at the same time. Further, the defendant's testimony regarding the opportunities he had to impress his prints

on the window was self-limiting. It was clearly in his best interest to relate as many such incidents as possible, and reasonable for the jury to believe he did so. Thus, the defendant's own testimony limited the possible times he could have touched the window. Yet the jury, as the trier of fact, was at liberty to disbelieve the defendant's testimony, which it apparently did. Once that testimony was disbelieved, the jury could reasonably believe that the prints were made at the time of the crime.

The defendant's other arguments concerning the motion for acquittal incorrectly assume that the defendant's evidence was necessarily accepted by the jury. It is obvious that the thrust of this attack is an attempt to have us retry this case. It was for the trier of fact to weigh the evidence and determine the credibility of witnesses. "This court cannot and will not weigh the evidence contained in the record before us." *Pantlin & Chananie Development Corporation* v. *Hartford Cement & Building Supply Co.,* 196 Conn. 233, 237, 492 A.2d 159 (1985); *Sansone* v. *Lettieri,* 4 Conn. App. 466, 467–68, 495 A.2d 720 (1985).

Nothing in this record indicates that the trial court abused its discretion in denying the defendant's motion for judgment of acquittal.

IV

Next, the defendant claims the trial court erred by allowing the state's impeachment of the defendant through use of a prior act of misconduct. The act in question was the defendant's false assertion made while under oath in an accelerated rehabilitation proceeding that he had no cases pending against him. Although conceding the normal admissibility of this evidence as it relates to veracity, the defendant argues that the court was obligated to exclude it because of the surrounding circumstances. He cites the lack of an

interpreter at the prior proceeding which led him to misunderstand the question he answered, and his public defender's perfunctory explanation of the proceeding in English which confused him as to its meaning. The resulting prejudice, he urges, should have led the court to reject the offered evidence, particularly in view of the defendant's reliance upon his own testimony.

Prior acts reflecting adversely upon a person's honesty bear sharply on the issue of veracity at trial and, subject to the court's discretion, may be admitted for purposes of impeachment. *State* v. *Martin,* 201 Conn. 74, 87, 513 A.2d 116 (1986). This was such a case. The fact that the defendant's credibility was critical to his defense cannot insulate him from attack on this ground, nor should it. The question raised regarding the defendant's language problems and resultant confusion is highly relevant to the weight of the evidence, but not necessarily to its admissibility. In this context, the trial court has considerable discretion to determine the extent of cross-examination and whether its probative value outweighs its prejudicial effect. *State* v. *Martin,* supra, 88–89; *Vogel* v. *Sylvester,* 148 Conn. 666, 676, 174 A.2d 122 (1961). The entire panoply of facts was properly set before the jury. Under the circumstances of this case, we cannot conclude that the court abused its discretion.

The defendant points out that the court's ruling was in stark contrast to its refusal to allow impeachment evidence against the complainant by a character witness. A review of the record, however, reveals that the defendant failed to produce the required predicate for his character witness' testimony. In the absence of a satisfactory foundation for such evidence, the court properly excluded it. *State* v. *George,* 194 Conn. 361, 368–69, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985); *State* v. *Rodriguez,* 180 Conn. 382, 389, 429 A.2d 919 (1980).

## V

Finally, the defendant asks us to find that the court erred in its charge to the jury (1) in failing to explain fully and define each of the elements of burglary, (2) in diluting the state's burden of proof by commenting that the jury need not spend too much time on some of the questions, and (3) in misstating the law of fingerprint evidence. The defendant failed to take exception to the first proposition but presses for review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), since a charge omitting an essential element of a crime raises an issue of fundamental constitutional dimension. *State* v. *Grant,* 6 Conn. App. 24, 28, 502 A.2d 945 (1986). This case is distinguishable from *State* v. *Grant,* supra. The record reveals that the court did inform the jury of all the elements of the crime of burglary. The defendant's real claim, therefore, is that the court did not define the elements of burglary in greater detail. The charge, of course, must be viewed in its entirety. Unlike *State* v. *Grant,* supra, where illegal entry was in contention, the term "unlawfully" was defined in a supplemental charge in this case, and the other undefined terms bear commonly understood meanings. *State* v. *Maresca,* 173 Conn. 450, 460–61, 377 A.2d 1330 (1977); see also General Statutes § 1-1(a).

We have often repeated that claims raised for the first time on appeal will not ordinarily be reviewed. Our rules of practice are not simply formalities, but serve to alert the trial court to potential problems while there is still time to act. Assigning error on the basis of objections not raised at trial "unfairly subjects the judges and the opposing party to trial by ambush." *State* v. *Rogers,* 199 Conn. 453, 460–61, 508 A.2d 11 (1986). "Only in the most exceptional circumstances can and will this court consider a claim, constitutional or other-

wise, that has not been raised and decided in the trial court." *State* v. *Evans,* supra, 69.

To the extent that the defendant's first disagreement with the trial court's charge is reviewable, we find no error. We also hold that the claim made at oral argument based upon *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985), was never properly raised and is not before this court.

The claim that the court's comments diluted the state's burden of proof are without merit. The court did comment that the jury need not take much time in determining that a burglary was committed in a building. It would, of course, be fatuous to suggest that the victim's home was not a building. This case is controlled by *State* v. *Collette,* 199 Conn. 308, 507 A.2d 99 (1986), in which our Supreme Court, referring to the trial court's comment that "I don't think there is really any dispute, a burglary occurred" stated that "[t]he court was at this point diverting the jury's attention away from the burglary issue, which was virtually uncontested at trial, and toward the identification question, the key to the whole case. This type of emphasis and direction by the trial court was, under the circumstances, appropriate." Id., 318. As in *State* v. *Collette,* supra, the court here did not withdraw from the jury the issue of whether a burglary occurred since it told the jury it was the state's responsibility to prove the elements of the crime beyond a reasonable doubt. See *State* v. *Taylor,* 196 Conn. 225, 232, 492 A.2d 155 (1985).

It is also clear that the court's comment that "the burglary and larceny occurred at the same time" did not adversely influence the jury. The defendant's acquittal of the larceny charge and conviction of burglary reflect that no prejudice resulted from the comment.

The defendant's final claim is that the court misstated the law of fingerprint evidence. To the extent that the defendant took exception to the court's charge, in view of our previous discussion and our review of the record, we conclude there was no error. See *State* v. *Thorpe,* supra.

"The ultimate test of the charge is whether, read in its entirety, it fairly presents the case to the jury so that no injustice is done." *State* v. *Storlazzi,* 191 Conn. 453, 466, 464 A.2d 829 (1983); *State* v. *Widget,* 11 Conn. App. 47, 52, 525 A.2d 548 (1987). We conclude the charge satisfied this test.

There is no error.

In this opinion the other judges concurred.