STATE OF CONNECTICUT *v.* EUGENE A. BRYANT
(AC 29064)

Bishop, Beach and Borden, Js.

Argued October 21—officially released December 23, 2008

*Jodi Zils Gagne*, for the appellant (defendant).

*Rocco A. Chiarenza*, special deputy assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Peter A. McShane*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The sole issue in this appeal is whether there was sufficient evidence to identify the defendant as the perpetrator of the crimes charged. The defendant, Eugene A. Bryant, appeals from the judgment of conviction, rendered after a jury trial, of (1) burglary in the third degree in violation of General Statutes § 53a-103,[1] (2) larceny in the third degree in violation of General

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

Statutes § 53a-124 (a) (2)[2] and (3) theft of a firearm in violation of General Statutes § 53a-212.[3] The defendant claims that the trial court improperly failed to grant his motions for a judgment of acquittal because there was insufficient evidence to support the jury's findings. We affirm the judgment of the trial court.

After the close of the state's case, the defendant moved for a judgment of acquittal on all charges. The court denied the motion. Thereafter, at the close of all the evidence, the defendant made a second motion for a judgment of acquittal on all charges, which the court again denied. Subsequently, the jury returned a verdict of guilty on all charges, and the court rendered judgment accordingly. This appeal followed.

The jury reasonably could have found the following facts. Between 9:15 a.m. and 9:30 a.m. on May 12, 2005, Deborah Fogg left her home on 536 Boston Post Road in Waterford, where she lived with her husband, James Fogg, to visit her daughter and grandchildren. Before leaving her home, she locked all the doors and windows. After spending a few hours with her daughter and grandchildren, Deborah Fogg went shopping before returning home at approximately 12:15 p.m. Once home, she found the back door of her house broken and hanging by a single hinge. She entered her home and noticed that her electronic keyboard was missing and that her living room was in disarray. She quickly grabbed her cordless telephone and went outside to call 911 because she feared that someone was still in the house and that the individual may have discovered her gun, a Smith &

---

[2] General Statutes § 53a-124 (a) provides in relevant part: "A person is guilty of larceny in the third degree when he commits larceny [and] (2) the value of the property or service exceeds one thousand dollars . . . ."

[3] General Statutes § 53a-212 (a) provides in relevant part: "A person is guilty of stealing a firearm when, with intent to deprive another of his firearm or to appropriate the same to himself or a third party, he wrongfully takes, obtains or withholds a firearm . . . ."

Wesson .357 Magnum revolver, which she kept upstairs in her nightstand.

Deborah Fogg waited outside until Officer Richard T. Morgan and Officer Steven Bellos and his canine, Frido, arrived at her house. Frido and the officers searched the Foggs' house to make sure the intruder was no longer present before Deborah Fogg was allowed to reenter her home. Once inside, she discovered that in addition to the living room, the Foggs' bedroom also had been rifled through, and that she and her husband were missing the following items: a Smith & Wesson .357 Magnum revolver; an electronic keyboard, a keyboard stand and power pack; a digital camera and memory stick; a gold anklet and ring; a cordless drill and two battery packs; and a pair of binoculars.[4] The total value of the stolen items, not including the binoculars, was $1262.39. See footnote 4.

Frido and Bellos also searched the exterior of the residence to see if Frido could pick up the intruder's scent. Bellos and Frido walked around the entire residence several times, and the only time Frido detected a scent was when he passed the back door of the house, at which point Frido would go from the back door to the driveway and then stop, indicating to Bellos that the perpetrator had left in a vehicle. In addition to the canine search, Bellos interviewed James Cook, a neighbor. Cook stated that he saw a teal, mid-1990s Volkswagen Golf car at the Foggs' residence and observed a man exit the vehicle and walk to the back of the Foggs' house.

In addition to the two officers, Detective Sergeant Michael Hurley was dispatched to 536 Boston Post Road to assist in the processing of the crime scene. Hurley

---

[4] The Foggs later found the binoculars in Deborah Fogg's car. None of the other items reported missing was ever recovered.

photographed the residence and collected physical evidence, including fingerprints, a drawer from Deborah Fogg's jewelry box, an owner's manual for a Craftsman drill and the gun case of the Smith & Wesson .357 Magnum revolver. The physical evidence collected by Hurley was sent to the state forensic science laboratory for analysis, and a fingerprint and thumbprint taken from the jewelry box were determined by a laboratory technician to match those of the defendant.

On the basis of the forensic laboratory results, an arrest warrant was issued for the defendant. The defendant was arrested on June 8, 2005, and the car he was driving at the time, a teal 1993 Volkswagen Golf, was impounded. Cook later identified the vehicle as being the "same exact car" he saw in the Foggs' driveway on May 12, 2005.

The defendant claims that there was insufficient evidence to support his conviction on all three charges.[5] More specifically, he contends that only one fingerprint[6] was found at the scene of the crime and that he presented a valid explanation for why his fingerprint was there. We disagree.

---

[5] The defendant, in his brief, also contends that he was not the perpetrator because the perpetrator was described as being "a white male of average height," and he is black and more than six feet tall. To support his argument, the defendant relies on a police report written by Morgan, which states that Cook told Bellos that he observed a white male in a teal Volkswagen Golf parked in the Foggs' driveway and Cook's testimony, at trial, that the man he observed was of "average height." Those contentions, however, are without merit.

First, the police report was never entered into evidence at trial, and Cook testified that he did not see the race or color of the man in the vehicle, nor did he give Bellos such information about the individual. Second, although Cook testified that the man he saw was of average height, which Cook considered to be "not over six feet," whether a man more than six feet tall is of "average height" was a factual question for the jury to decide.

[6] Although the defendant also suggests in passing that the fingerprint found was not properly collected and therefore was not reliable evidence, he presents no separate evidentiary analysis regarding the method by which the fingerprint was collected. We therefore decline to discuss it.

In determining whether there was insufficient evidence to support a guilty verdict, "[t]he facts and the reasonable inferences stemming from the facts must be given a construction most favorable to sustaining the jury's verdict. . . . It is established case law that when a defendant challenges the sufficiency of the evidence, we apply a twofold test. We first review the evidence . . . in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn . . . the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Citation omitted; internal quotation marks omitted.) *State* v. *Hamlett*, 105 Conn. App. 862, 866, 939 A.2d 1256, cert. denied, 287 Conn. 901, 947 A.2d 343 (2008).

Sufficient evidence was presented at trial to establish the defendant as the perpetrator of the crimes charged beyond a reasonable doubt. First, the jury was presented not only with a fingerprint that matched that of the defendant but also a thumbprint. Second, the Foggs testified that neither they, nor their children, had ever met the defendant and that the defendant had never been in their house. James Fogg further testified that no one had been in the couple's bedroom or touched the jewelry box except for the Foggs. Third, the state presented the testimony of Bellos, who explained that Frido's repeated behavior of walking from the back door of the Foggs' house to the driveway and then stopping indicated that the perpetrator left in a vehicle. Fourth, the neighbor, Cook, testified that the impounded, teal 1993 Volkswagen Golf was the same vehicle he saw in the Foggs' driveway on the day the crime was committed and that he was so sure it was

the same car that he would bet his life on it. Cook also testified that on the day of the crime, he saw a man exit the teal Volkswagen Golf and walk to the back of the Foggs' house, which is the exact location where the perpetrator gained entry into the home.

The defendant asserts that he provided a valid reason for why his fingerprint was found on the jewelry box. At trial, the defendant testified that he met Deborah Fogg at the East Lyme, Flanders Four Corners McDonald's restaurant in April, 2005. According to the defendant, he came to her assistance after observing her in a heated discussion with a black male in the McDonald's parking lot. The defendant got into a physical altercation with a second individual as a result of his intervention. After the fight, the defendant gave Deborah Fogg a ride to her home, and she invited him into her house so she could clean the scrapes he received during the fight. Because the cleaning supplies were in her bedroom, she and the defendant went upstairs. After she cleaned the defendant's wounds, they began to kiss, at which time the defendant lost the backing to his earring. Deborah Fogg told the defendant to go into her jewelry box and get a backing to replace the one he had lost. Shortly, thereafter, the defendant left the residence. Deborah Fogg, on the other hand, testified that she had never had an altercation with a black male at the Flanders Four Corners McDonald's, had never met the defendant, had never had a relationship with him and had never invited him into her home.

The defendant relies on *State* v. *Payne*, 186 Conn. 179, 440 A.2d 280 (1982), to support his argument. In that case, the principal evidence offered by the state to connect the defendant to the crime consisted of two fingerprints, identified as those of the defendant, which were found on the outside of the driver's side window of the victim's car. Id., 181. The defendant presented

evidence of the accessibility of the exterior of the victim's car to the general public and to the defendant in areas he frequented. Id., 183 n.3. The Supreme Court concluded that the fingerprint evidence alone was insufficient to sustain the conviction because it did not "reasonably exclude the hypothesis that the defendant's fingerprints were placed on the car at a time other than during the perpetration of the crime." Id., 184.

The defendant's reliance on *Payne*, however, is misplaced. Unlike in *Payne*, here the Foggs' testimony did, if believed, reasonably exclude the hypothesis that the defendant's fingerprint was placed on the jewelry box at a time other than during the perpetration of the crime. See id. In this context, the jury was free to disbelieve the defendant's explanation as to why his fingerprint was found on the jewelry box. See *State* v. *Coriano*, 12 Conn. App. 196, 202–203, 530 A.2d 197, cert. denied, 205 Conn. 810, 532 A.2d 77 (1987). *Payne* does not hold, as the defendant's argument suggests, that simply because the defendant supplied a hypothesis that would explain the presence of his fingerprint, the jury must believe it.

The judgment is affirmed.

In this opinion the other judges concurred.