STATE OF CONNECTICUT *v.* WILLIAM M. FOORD ET AL.

O'SULLIVAN, DALY, SHEA, ALCORN and PHILLIPS, Js.

Argued February 8—decided April 18, 1955

286

*James W. Carpenter, Ernest W. McCormick* and *Robert L. Fay,* with whom was *Ernest A. Inglis, Jr.,* for the appellants (defendants).

*Douglass B. Wright,* assistant state's attorney, with whom was *Albert S. Bill,* state's attorney, for the appellee (state).

O'SULLIVAN, J. The first count of the information alleges that the defendant William M. Foord violated § 8487 of the General Statutes in that he received a bribe as a member of the General Assembly; the second count alleges that the defendant Clifford B. Backes violated § 8488 in that he attempted to improperly influence legislation. Each defendant elected trial to the court and each, after full hearing, was found guilty as charged. Both defendants have appealed to this court. Their joint assignments of error are predicated upon the denial of requested changes in the finding, upon the overruling of their claims of law and upon the conclusion reached by the trier that each was guilty as charged. This last assignment raises the ultimate question whether upon all the evidence the court was justified in finding the defendants guilty beyond a reasonable doubt and makes unnecessary a detailed consideration of

the claims of error directed against the finding. *State* v. *Serkau,* 128 Conn. 153, 154, 20 A.2d 725. We have given consideration to the finding, however, for the purpose of showing the specific facts found by the court upon conflicting evidence. *State* v. *Dziob,* 133 Conn. 167, 168, 48 A.2d 377.

The evidence, including that shown by the finding to have been accepted by the court, supplemented by inferences it could reasonably have drawn, may be summarized as follows: M. Backes' Sons, Inc., a family corporation, founded by the grandfather of the defendant Backes and located at Wallingford, has been manufacturing fireworks since 1876. The defendant Backes entered the service of the concern in 1919 and has been its president since 1934. The defendant Foord has practiced law in Litchfield for many years. He was elected by that town to the state house of representatives for the sessions of 1949, 1951 and 1953. Backes and Foord first became acquainted when they appeared at a hearing on a fireworks bill before a legislative committee of the 1939 General Assembly. Foord attended on behalf of the American Legion. Although their interest in regulatory legislation arose from divergent sources, they joined in urging the committee to report favorably upon a comprehensive bill. Such a report was subsequently made, and during that session the General Assembly adopted its first public act upon the subject of fireworks. General Statutes, Cum. Sup. 1939, § 946e. The defendants again met in 1946, when Backes was called as a witness for an accused person who was being prosecuted by Foord as grand juror. The case concerned an alleged sale of illegal fireworks. It developed during the course of that trial that, due to the lack of a definition of the word firecracker, an ambiguity existed in the act of 1939.

Foord resolved to prepare for the next legislature
something to remove the ambiguity, and Backes said
that he would co-operate by giving advice on tech-
nical matters. They collaborated upon a draft of a
proposed law which was introduced at the 1947 ses-
sion but failed of passage. At the following session
in 1949, Foord, as a member of the house, reintro-
duced the draft and it was enacted into law. Sup.
1949, § 434a. It amended the 1939 act by defining
"firecracker."

In June, 1950, the state police took the position
that certain products of the Backes company did
not conform to statutory restrictions upon firecrack-
ers as they were defined by law. Backes then re-
tained Foord to discuss the matter with the state
police, and Foord thereupon conferred with Captain
Ross V. Urquhart on the subject. They decided that
the existing law was inadequate and that a new bill
should be submitted to the General Assembly of
1951. On June 30, 1950, the Backes company paid
Foord $50 for his services and $7.80 for expenses
incurred in connection with these discussions.

About this time, the American Pyrotechnics Asso-
ciation, at Backes' urging, decided to prepare a uni-
form law on the subject of fireworks. Backes, who
agreed to undertake the work, had the proposed law
in such shape that by January, 1951, the association
was able to print it in booklet form and distribute it
to legislators around the country. In the fall of
1950 Backes had engaged Foord to assist in connec-
tion with the proposed law.

In November, 1950, Foord was elected a repre-
sentative from Litchfield to the General Assembly.
Shortly after it convened in January, 1951, he re-
ceived from Backes a letter regarding a new fire-
works bill to be submitted. In the letter Backes

pointed out the desirability of obtaining the active support of the state police for the bill. Foord thereupon prepared a draft of a bill for an act keyed to Connecticut statutes but based on the bill prepared by Backes for the American Pyrotechnics Association. Foord sent a copy of his draft to Captain Urquhart. From then on until the following May, Foord and Backes corresponded extensively about the proposed legislation and met on several occasions to discuss it. During this period they also conferred with various officials in the state police concerning the subject. Before the last day set for the introduction of bills in the session, Foord introduced house bill No. 855 for the regulation of fireworks. The bill was referred to the judiciary committee, to which Foord had previously been appointed, and by that committee was referred to a subcommittee of three, the chairmanship of which he had secured for himself. Foord obtained this assignment to the subcommittee so that he could promote the bill in which he was personally interested.

On March 1, 1951, Foord billed the Backes company for $1500 for professional services. The amount was suggested by Backes. The company paid the bill on March 7.

On March 22, Foord offered for legislative action a redrafted bill as a substitute for the original house bill No. 855. This followed receipt by him of a copy of a bill proposed by Captain Urquhart, who thereafter was prevented by illness from further activity concerning the pending legislation. Before offering the substitute bill, Foord and Backes had analyzed the state police proposal. Immediately thereafter Foord prepared a digest and explanation of his substitute bill. The explanation stated that the bill was the result of co-operative effort between the state

police, a manufacturer of fireworks, a wholesale dealer therein, and himself. When Backes received a copy of the bill, he wrote to Foord stating that he was anxious to know how Urquhart reacted to the changes which had been made in the latter's proposal and expressing the hope that Urquhart would be satisfied with them. On April 6, Backes again wrote to Foord suggesting certain additional alterations in the bill. Foord, in reply, said that he would bring them before the subcommittee. After a hearing at which Foord was active in pressing for its adoption, the substitute bill was submitted on May 11 with a favorable report to the judiciary committee as a whole. Under suspension of the rules, requested by Foord when the matter came up for action before the house, the bill was passed by that chamber and subsequently by the senate. This occurred in the last days of the session. When a member of the house objected to suspension of the rules, Foord assured him that the bill was all right and had been approved by the commissioner of state police, although Foord had never discussed the bill with the commissioner and the latter had never seen or approved it. As finally passed, the bill, which limited the length of firecrackers to two inches and their diameter to seven-sixteenths of an inch, gave the Backes company a temporary monopoly in the manufacture of firecrackers. The new act became effective on June 12, 1951, and appeared as §§ 814b to 826b, inclusive, of the 1951 Cumulative Supplement. Backes had not at any time during the session considered employing a lobbyist to represent his interests. He relied on Foord to carry out his purposes, feeling that the latter was accomplishing everything that Backes could have wanted from a lobbyist.

Approximately a month after the General Assembly had adjourned, a Hartford newspaper published a story to the effect that certain wholesalers and retailers were complaining because the new law had given the Backes company a monopoly of the two-inch firecracker. The paper commented on the fact that the law had been sponsored by Foord, "a paid counsel on at least one occasion of the Backes firm." When Foord was asked about the story he admitted that he had formerly acted as a paid attorney for the Backes company but added that, while the act did create a temporary monopoly for the company, that result had been unintentional. About the same time, Backes told the writer of the newspaper story that his company had a temporary monopoly under the act because "we were in on the ground floor. We knew what was going on and were able to get ready for it." Subsequently, Governor Lodge asked the attorney general to make an investigation of alleged irregularities in the passage of the act. On July 11, 1951, during the course of the investigation, Foord filed with the attorney general an affidavit concerning his activities in the fireworks legislation. He stated in the affidavit that Backes had retained him to consult with the state police about the complaint made in June, 1950, but he failed to say that he had received the $1500 fee paid in March, 1951. A full disclosure of the relationship of Foord and Backes was not made by them in 1951 either to the attorney general or to any of the legislators.

During January of the 1953 session of the General Assembly, Representative Stanley F. Withe of Burlington introduced a bill to prohibit the sale or use of fireworks except for supervised public displays. On the day after the introduction of this bill, Foord wrote Backes pointing out that he was no longer a

member of the judiciary committee but that he was opposed to the proposed prohibitory act and doubted its passage. Shortly thereafter, Foord called Withe's attention to the 1951 act and told him that it was a good law. At a hearing on Withe's bill, Foord appeared and spoke against it. Backes also wrote a letter to the committee expressing his opposition to the bill. On April 6, 1953, Backes and Harold Disco, a fireworks distributor at Norwich, caused an advertisement to be inserted in newspapers published in six cities of the state. The advertisement stated, among other things, that the fireworks industry had refused to participate in any attempt to bribe the judiciary committee. On the following day, the General Assembly adopted a resolution appointing a committee to investigate the statement. The investigation developed for the first time the fact that Foord had been paid $1500 during the previous session.

In addition to the foregoing facts, upon all of which there was direct evidence, the court could reasonably have inferred that the $1500 fee paid to Foord was for services rendered in large part after January 1, 1951; that Foord had performed, after that date, no services for the Backes company or for Backes other than those hereinbefore narrated; and that the payment was made by Backes through the instrumentality of the family corporation which he headed and was received by Foord as a payment from Backes. The court might also with reason have inferred that Foord, in acting as he did, had done so to further the interests of the Backes company to such an extent that the company obtained a temporary monopoly which was of financial advantage to it by reason of the legislation adopted through his efforts.

Sections 8487 and 8488, the pertinent parts of which are set forth below,[1] are incorporated into the General Statutes in a chapter captioned "Offenses against Public Justice." We have not previously had occasion to pass upon any appeal involving either section. However, as the defendants say in their brief, the sections clearly prohibited "the $1,500 payment provided it in whole or in part was paid by Backes and received by Foord for 'the purpose of influencing' his legislative conduct."

The important factor upon which the case turned dealt with the matter of the intent of the one who gave and of the other who received the $1500. To find the defendants guilty, it was essential for the court to decide that the payment and acceptance of the money were for the corrupt purpose alleged in the information. The court determined this matter

[1] "Sec. 8487. BRIBERY OF EXECUTIVE OR LEGISLATIVE OFFICER. Any . . . member of the general assembly, who shall accept or receive . . . from any person . . . or corporation, whether public or private, any money or other valuable thing, except the compensation provided by law, . . . for the purpose of influencing the conduct or behavior of such . . . member of the general assembly in voting . . . upon, or in supporting . . . any . . . bill . . . pending before the general assembly, or either branch thereof, or before any committee of the general assembly, or of either branch thereof, . . . shall be fined not more than two thousand dollars or be imprisoned not more than ten years or both and shall also forfeit the office to which he was elected and be debarred from holding any public office in this state."

"Sec. 8488. ATTEMPT TO IMPROPERLY INFLUENCE LEGISLATION. Any . . . officer of any . . . corporation, whether public or private, or any person, whether acting in his own behalf or as the attorney, agent or employee of any . . . corporation, whether public or private, who shall, directly or indirectly . . . pay . . . to any member of the general assembly . . . any . . . money or other valuable thing, for the purpose of inducing or procuring such . . . member . . . to support . . . any . . . bill . . . pending before the general assembly, or either branch thereof, or before any committee of the general assembly, or of either branch thereof, . . . shall be fined not more than one thousand dollars or imprisoned not more than five years or both and be debarred from holding any public office in this state."

adversely to each defendant and in so doing relied in part on the inferences to which we have referred above. The defendants' real grievance appears to be directed against the right of the court to have drawn the inferences in question. Time after time we have reiterated the statement that it is within the province of the trier, whether court or jury, to draw reasonable and logical inferences from the facts proven. *Orico* v. *Williams,* 139 Conn. 714, 717, 97 A.2d 556; *Alderman* v. *Kelly,* 130 Conn. 98, 100, 32 A.2d 66; *Dumochel* v. *Becce,* 119 Conn. 175, 177, 175 A. 569; *Shaughnessy* v. *Morrison,* 116 Conn. 661, 664, 165 A. 553; *Ruerat* v. *Stevens,* 113 Conn. 333, 338, 155 A. 219; *Tomasko* v. *Raucci,* 113 Conn. 274, 276, 155 A. 64; *Weidlich* v. *New York, N.H. & H.R. Co.,* 93 Conn. 438, 441, 106 A. 323. And while these citations all refer to civil cases, the rule is applicable to criminal cases. *State* v. *Murphy,* 124 Conn. 554, 562, 1 A.2d 274; *State* v. *Willis,* 71 Conn. 293, 306, 41 A. 820; see *State* v. *Litman,* 106 Conn. 345, 352, 138 A. 132. A limitation upon the trier is that the inferences should be drawn only from and bear a logical relation to other facts which have been proven. *Fitch* v. *State,* 138 Conn. 534, 541, 86 A.2d 718. They cannot legally rest on facts which are merely surmised. Ibid.; *Donovan* v. *Connecticut Co.,* 86 Conn. 82, 87, 84 A. 288.

It is, of course, true, as the defendants maintain, that any conclusion, reasonably to be drawn from the evidence, which is consistent with the innocence of the accused must prevail. *State* v. *Guilfoyle,* 109 Conn. 124, 139, 145 A. 761. The same rule, however, does not apply to inferences. In *State* v. *Murphy,* supra, the claim was advanced that when any circumstance offered in evidence is susceptible to two inferences, one of which is in favor of guilt and the

other of innocence, the circumstance must be disregarded and cannot be taken into consideration by the trier in reaching its conclusion. We there said (p. 562): "Such a rule would virtually eliminate circumstantial evidence as a means of proof. Whatever authority there may be in support of it in the federal courts in cases of conspiracy to violate federal statutes, . . . it has no place in the law of this State where the jury are entitled to draw all fair and reasonable inferences from the facts and circumstances which they find established by the evidence." What the statement in the *Guilfoyle* case, supra, means is this: The trier may not reach a conclusion of guilt where the facts, established by the evidence, including those reasonably and logically inferred from other proven facts, are rationally consistent with the innocence of an accused. A conclusion of guilt requires proof beyond a reasonable doubt, and proof to that extent is proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion. *State* v. *Smith,* 138 Conn. 196, 200, 82 A.2d 816. But the requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition. *State* v. *Guilfoyle,* 109 Conn. 124, 139, 145 A. 761; *State* v. *Gargano,* 99 Conn. 103, 105, 121 A. 657. Upon all the evidence, including the inferences which the court was amply warranted in drawing, it was justified in concluding that the defendants were guilty of the offenses charged beyond a reasonable doubt.

There is no error.

In this opinion the other judges concurred.