### STATE OF CONNECTICUT *v.* MICHAEL IOVIENO
### (4862)

DUPONT, C. J., DALY and NORCOTT, Js.

Argued November 17, 1987—decision released June 14, 1988

*Kent Drager,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attor-

ney, and *Susan C. Marks,* deputy assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of three counts of burglary in the second degree in violation of General Statutes § 53a-102 (a), one count of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), and one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a).[1] He claims that the trial court erred (1) in determining that there was sufficient evidence to support the convictions, (2) in granting the state's motion for joinder of the three cases and denying the defendant's motion for severance, (3) in its instructions concerning the elements of burglary in the second degree, (4) in permitting the prosecutor to comment on the defendant's failure to testify in his closing argument, and (5) in its instructions concerning the state's burden of proof. We find error in part.

Three of the counts against the defendant, burglary in the second degree, unlawful restraint, and sexual assault in the first degree, all stem from an incident involving a residence on Rock Road, North Haven. The count of burglary in the second degree with intent to commit the crime of sexual assault therein involves a residence on Putnam Avenue in Hamden, and the remaining count of burglary in the second degree involves a residence on Dixwell Avenue in Hamden.

I

The defendant's first claim of error is that there was insufficient evidence to support his conviction. The issue of sufficiency of evidence and its appropriate standard of review has been analyzed countless times by

---

[1] The defendant was acquitted of a count alleging attempted sexual assault in the first degree.

both this court and our Supreme Court. An excellent summation of the issue of sufficiency was collated and reported in *State* v. *Little,* 194 Conn. 665, 485 A.2d 913 (1984). In *Little,* the court stated: " 'In determining whether the evidence is sufficient to sustain a verdict, we have said that " 'the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. . . . [T]he evidence presented at trial must be given a construction most favorable to sustaining the jury's verdict.' " *State* v. *Giguere,* 184 Conn. 400, 402–403, 439 A.2d 1040 (1981); see *Jackson* v. *Virginia,* 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560, reh. denied, 444 U.S. 890, 100 S. Ct. 195, 62 L. Ed. 2d 126 (1979); *State* v. *Kish,* 186 Conn. 757, 767, 443 A.2d 1274 (1982). "Each essential element of the crime charged must be established by proof beyond a reasonable doubt"; *State* v. *Stankowski,* 184 Conn. 121, 126, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); and " 'although it is within the province of the jury to draw reasonable logical inferences from the facts proven, they may not resort to speculation and conjecture.' " *State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 749 (1980).' *State* v. *Gabriel,* 192 Conn. 405, 421–22, 473 A.2d 300 (1984). ' " 'A conclusion of guilt requires proof beyond a reasonable doubt, and proof to that extent is proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion.' *State* v. *Foord,* 142 Conn. 285, 295, 113 A.2d 591 [1955]; *State* v. *Kelsey,* 160 Conn. 551, 553, 274 A.2d 151 [1970]; *State* v. *Reid,* 154 Conn. 37, 40, 221 A.2d 258 [1966]; *State* v. *Annunziato,* 145 Conn. 124, 136, 139 A.2d 612 [1958]." *State* v. *Mayell,* [163 Conn. 419,

427–28, 311 A.2d 60 (1972)].' *State* v. *Payne,* 186 Conn. 179, 184, 440 A.2d 280 (1982). ' "But the requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition." (Citations omitted.) *State* v. *Foord,* supra, 294–95; see *State* v. *Payne,* [supra] . . . . "Emphasis needs to be placed on the distinction between the word 'reasonable' and the word 'possible.' . . . Proof of guilt must exclude every reasonable supposition of innocence. . . . '[A] mere "possible hypothesis" of innocence will not suffice.' " (Citations omitted.) *State* v. *Englehart,* 158 Conn. 117, 121–22, 256 A.2d 231 (1969).' *State* v. *Morrill,* 193 Conn. 602, 611, 478 A.2d 994 (1984); see *State* v. *Foord,* supra, 295; *State* v. *McDonough,* 129 Conn. 483, 485, 29 A.2d 582 (1942). While proof of guilt must exclude every reasonable supposition of innocence, it need not exclude every possible supposition of innocence. *State* v. *Englehart,* supra, 121." *State* v. *Little,* supra, 671–72. We will consider the crimes at each of the three locations in chronological order and the facts which the jury could have found in support of its guilty verdicts.

## A

At approximately 1 a.m. on November 13, 1984, a young woman had been dropped off after a date and walked to the front door of her house on Dixwell Avenue in Hamden. The young woman lived in a two-family house with her two sisters and their families. As she was ringing the doorbell, she heard an automobile put on its brakes rather hard and observed a man get out of the stopped car. She recalled that the car was an older model, red, with a red vinyl top. The driver subsequently identified by her as the defendant, was a male about five feet, ten inches tall, with brown hair, and a full beard and moustache. He appeared to be in his late twenties, and was wearing a white hat and a dun-

garee jacket. Fearing an encounter with the defendant, the woman fled to the rear of the house where she frantically knocked, cracking a window in the process, to get the attention of her sisters. Her sister admitted her and she went upstairs to her room where she saw the defendant return to his vehicle and drive away.

While the young woman was being admitted into the house by her sister, her brother-in-law went to the front door and unlocked it. After discovering that his sister-in-law had been allowed in, he turned to the front door and observed the defendant who had walked into the house. The defendant asked for Billy Anderson, a nephew of the occupants who no longer resided there although the name Anderson was listed on the mailbox. The defendant, who identified himself as Mike Johnson, went out to his car after being informed that Billy no longer lived there.[2]

The defendant argues that there was no evidence concerning the necessary element of the defendant's "intent to commit a crime therein" as required for a conviction of burglary in the second degree under General Statutes § 53a-102 (a).[3] We agree.

"Our Supreme Court has stated: 'Intent is a mental process, and absent an outright declaration of intent, must be proved through inferences drawn from the actions of an individual, i.e., by circumstantial evidence.' *State* v. *Crump,* 201 Conn. 489, 495, 518 A.2d 378 (1986). Furthermore, 'any inference drawn must be rational and founded upon the evidence.' *State* v. *Williams,* 202 Conn. 349, 355, 521 A.2d 150 (1987); see also B. Holden & J. Daly, Connecticut Evidence,

[2] The police later questioned Bill Anderson who denied knowing the defendant or anyone named Mike Johnson.

[3] General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

§ 66 (c)." *State* v. *D'Ambrosio,* 14 Conn. App. 309, 321, 541 A.2d 880 (1988). In this case, there was no such circumstantial evidence available for the jury. In *State* v. *Zayas,* 195 Conn. 611, 620, 490 A.2d 68 (1985), our Supreme Court stated that, in burglary cases, evidence of an attempt to make a forcible entry was sufficient evidence for the jury to infer an intent to commit the crime of theft therein. Similarly, in *State* v. *Sinclair,* 197 Conn. 574, 577–78, 500 A.2d 539 (1985), the court relied upon the defendant's "surreptitious entry" and his flight from apprehension to uphold the jury's inference beyond a reasonable doubt the defendant's similar intent.

In this case, there is no forcible entry, since the defendant simply walked through the unlocked front door. Indeed, the defendant's behavior, at the time of entry, did not indicate intent to commit a crime. Moreover, there was no evidence introduced about flight. The defendant, upon being told that Billy Anderson no longer lived there, walked out to his car. It is important to recognize that the state's theory of the crime is that the defendant intended to commit a sexual assault. The intent to commit a crime must occur when the defendant enters or remains unlawfully in a dwelling. Any intent that the defendant might have had to commit a crime appeared to have evaporated since the defendant did not pursue the young woman and he did not know whether she had been allowed in the house when he entered. Moreover, since he was visible to those in front of the house, and vice versa, his conduct did not support an inference to commit any crime therein. The evidence presented was therefore insufficient to support the defendant's conviction on one of the burglary counts.

## B

On that same night, at approximately 1:20 a.m., Barbara Collins was in her Putnam Avenue apartment

with her fifteen year old son, her ten year old daughter and her son's girlfriend. She heard a noise by the kitchen door and called to her son that someone was at the door. Seeing the doorknob move she headed for the kitchen telephone to call the police. At this point, the door was kicked open and a male, later identified as the defendant, burst into the apartment and lunged for Collins. He was attempting to push her toward the sofa when their feet became entangled and they both fell to the floor. Collins' son struck the defendant and yelled "get the gun" which caused the defendant to leave. The distance from the site of the Dixwell Avenue incident to the Putnam Avenue apartment was approximately one and one-half miles.

The defendant claims that there was insufficient evidence that he entered the Putnam Avenue apartment with the intention of committing a sexual assault because the jury could have found an innocent purpose for his entry.[4] We disagree.

The fact that sexual assault was not proven to have been committed does not vitiate the guilty verdict. "This is so because the crime proscribed by § 53a-103a is complete once there has been an unlawful entering or remaining in a building with the intent to commit a crime in that building." *State* v. *Little,* supra, 675. From the evidence presented, the jury could reasonably have inferred that the defendant entered Collins' apartment with the sole purpose of sexually assaulting her. The defendant's alternative hypothesis that he entered the apartment to visit an old acquaintance of his who had previously lived there is unreasonable in light of his conduct. By our common experience, we know that one does not forcibly enter a home at 1:30 a.m. to visit the occupant. Moreover, one does not

---

[4] The information specified sexual assault as the predicate crime for the Putnam Avenue incident.

accost the occupant upon entry when motives are innocent. As has been quoted countless numbers of times, "common sense does not take flight when one enters a courtroom." *State* v. *Zayas,* supra, 620.

## C

On the same night in question, at approximately 3:20 a.m., the victim was asleep in her Rock Road residence in North Haven, when she received a telephone call purportedly for her husband. The caller asked for the victim by the name she was commonly referred to in the neighborhood. Identifying himself as "Bill Billings," the caller said it was an emergency and that he needed to speak to her husband. The victim explained that her husband was out of town. Shortly thereafter, the victim heard the back door open and someone enter, but did not lock her bedroom door because she was apprehensive for her two children sleeping upstairs. The intruder entered her bedroom and fell on top of her and began kissing her. He then put a "rope-like thing" or "shoelace-type thing" around her throat and threatened to kill her. The victim was sexually assaulted and, when it appeared to be getting light out, the victim watched the attacker leave via the rear door but did not hear the sound of an automobile.

Although it was dark in the bedroom, the victim was able to determine that the attacker was stocky, approximately five feet seven to five feet nine inches tall, he wore a hooded sweatshirt with a drawstring, sweatpants, a hat with a small brim, he had a beard, and moustache, and wore gloves when he entered but subsequently removed them.

The police discovered a fingerprint matching the defendant's left thumb on the outside of the back door of the victim's house. A specially trained police tracking dog followed a scent trail from the back door of the victim's house, across the lawn, through some

bushes, across a neighbor's lawn across the street to the corner of the defendant's property. A search warrant of the defendant's premises uncovered a pair of gray sweatpants, a hooded sweatshirt with a draw string, a thermal shirt and two pairs of shoelaces. Additionally, a hair found on the victim's bedsheet was similar to the defendant's pubic hair sample and a hair found on the defendant's hooded sweatshirt. The police also found human seminal fluid on a pair of undershorts taken from the defendant at the time of his arrest.

The defendant argues that the evidence of the fingerprint taken from the victim's house is, as a matter of law, insufficient to support the conviction with regard to the particular incident. The defendant cites *State* v. *Payne,* 186 Conn. 179, 182, 440 A.2d 280 (1982), and *State* v. *Mayell,* 163 Conn. 419, 426, 311 A.2d 60 (1972), in support of his argument. In *Payne* and *Mayell,* our Supreme Court addressed the concern of the evidentiary weight that a jury might put on fingerprints. The court stated that "a conviction may not stand on fingerprint evidence alone unless the prints were found under such circumstances that they could only have been impressed at the time the crime was perpetrated." *State* v. *Payne,* supra.[5]

The defendant's reliance on the rule established by these two cases is misplaced. The court in *Payne* and *Mayell* addressed the concern of evidence as the only evidence in the case linking a defendant to the crime. This, however, is not the case here. In this case, the

[5] Evidence produced at trial revealed that the victim had met the defendant on one occasion prior to November 13, 1984. The victim had been having difficulty putting some large packages into the trunk of her car. The defendant introduced himself as her neighbor and offered to put the packages in his trunk. The victim agreed and the defendant drove to her house where he handed her the packages at her mailbox in front of her house. The defendant did not enter her house on that occasion and did not go near the entry.

defendant's identity was established by evidence other than the fingerprint and the evidence established that the fingerprint was impressed during the commission of the crime. See *State* v. *Thorpe,* 188 Conn. 645, 648, 453 A.2d 88 (1982); *State* v. *Coriano,* 12 Conn. App. 196, 202–203, 530 A.2d 197, cert. denied, 205 Conn. 810, 532 A.2d 77 (1987). In addition to the fingerprint evidence, the defendant's identity was established by hair sample evidence, clothing and shoelaces found in the bedroom, the detailed description provided by the victim and the dog tracking evidence.

We conclude that the fingerprint evidence in addition to the other physical evidence presented at trial sufficiently established the identity of the defendant as the perpetrator of the Rock Road crimes.

## II

In his second claim of error, the defendant argues that the trial court's granting of the state's motion for joinder and its denial of the defendant's motion for severance resulted in substantial prejudice to him.

"A judicial authority may order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together. Practice Book § 829; General Statutes § 54-57. A judicial authority may also order separate trials if it appears that a defendant is prejudiced by joinder. Practice Book § 828. This does not mean that severance is to be had for the asking. *State* v. *King,* 187 Conn. 292, 302, 445 A.2d 901 (1982); see also *State* v. *Bell,* 188 Conn. 406, 410–11, 450 A.2d 356 (1982).

"The question of severance lies within the discretion of the trial court. We will not disturb the trial court's conclusion on the issue absent a clear abuse of discretion. The discretion to sever a trial should be exercised only if a joint trial will substantially prejudice the

defendant. Substantial prejudice is more than disadvantage and the formidable task of demonstrating an abuse of discretion and that a joint trial resulted in substantial prejudice falls to the defendant. *State* v. *Smith,* 201 Conn. 659, 669, 519 A.2d 26 (1986); *State* v. *Schroff,* 198 Conn. 405, 408, 503 A.2d 167 (1986); *State* v. *Rodgers,* 198 Conn. 53, 63, 502 A.2d 360 (1985); *State* v. *Wiggins,* 7 Conn. App. 95, 101, 507 A.2d 518 (1986). Simply put, the test to be applied is whether substantial injustice will result if the charges are tried together. *State* v. *King,* supra, 299; *State* v. *Oliver,* 161 Conn. 348, 360–61, 288 A.2d 81 (1971)." *State* v. *Edwards,* 10 Conn. App. 503, 506–507, 524 A.2d 648 (1987); see also *State* v. *Pollitt,* 205 Conn. 61, 530 A.2d 155 (1987); *State* v. *Perry,* 14 Conn. App. 526, 541 A.2d 1245 (1988).

In this case, the defendant contends that the joinder of the charges relating to the three separate incidents created no benefit while causing him to incur substantial prejudice. See *State* v. *Pollitt,* supra; *State* v. *Boscarino,* 204 Conn. 714, 529 A.2d 1260 (1987). The defendant argues that there was no overlap in evidence or witnesses, so there was no efficiency. Moreover, the defendant argues that "the only saving was to the system itself by having only one jury hear these three cases." Finally, the defendant claims a substantial prejudice in that the jury would have been unable to avoid using the evidence in one case to support their verdict in one or both of the other cases. We find the defendant's claim is without merit.

The trial court's decision to have all the matters heard in one trial did not result in substantial injustice to the defendant. See *State* v. *Pollitt,* supra. The state carefully presented the evidence to the jury in an orderly, chronological fashion in a way that did not confuse the jury. *State* v. *Bell,* supra; *State* v. *Wiggins,* 7 Conn. App. 95, 101–102, 507 A.2d 518 (1986). The very fact that the jury acquitted the defendant of the sexual assault

charge in the Putnam Avenue case is significant. By acquitting the defendant of this one count, the jury demonstrated that it was not simply cumulating evidence in order to decide the case before them, but, rather demonstrated that each count was analyzed separately. *State* v. *Lo Sacco,* 11 Conn. App. 24, 27, 525 A.2d 977, cert. denied, 204 Conn. 812, 528 A.2d 1158 (1988).

Furthermore, the trial court, from the time it first read the information to the jury, and prior to any evidence, made it abundantly clear that each incident and each crime was to be considered separately.[6] In addition, the trial court, in its charge to the jury, clearly instructed the jurors that the crimes charged were separate offenses and that the evidence should not be considered cumulatively.[7]

---

[6] In *State* v. *Wiggins,* 7 Conn. App. 95, 101, 507 A.2d 518 (1986), this court noted that, at the conclusion of the evidence of the first incident, the trial court instructed the jury that the second phase of the trial was about to begin. We note at this point that although this is the preferable course of action, a trial court's refusal to make such a break does not constitute error.

[7] In addition to stating to the jury at the start of the instruction that the incidents were to be considered separately, the trial court later stated:

"Now, each of these cases is a separate case, and they are to be considered by you as separate and unrelated with respect to your verdict. By that I mean you will consider the evidence offered bearing on each case separately and decide each case independently of the others. Your verdict that you reach on a count in any one case be it guilty or not guilty, has no bearing on your consideration of the other cases. Now, although we were trying three separate cases, there will only be one charge on the law. My remarks apply to all cases and all counts, unless I indicate to you the contrary or it should be obvious. And when I refer to the case, I mean all three cases which we try in this one joint trial. Now, as I mentioned earlier, we've been trying three, separate cases at the same time. Counts one, two, and three relate to what the State claims happened at the [victim's] home on Rock Road in North Haven. Counts four and five relate to what the State claims occurred at the Collins home on Putnam Avenue in Hamden. Count six relates to what the State claims happened at the Wetzel home on Dixwell Avenue in Hamden."

## III

The defendant's next claim of error is that the trial court erred in its charge by failing to specify the crimes underlying the burglaries which allowed the jury to convict him for the Dixwell Avenue burglary without finding the necessary intent to commit a crime. The defendant further contends that the court's failure to instruct on the specific crime enlarged the charge for the Putnam Avenue and Rock Road burglaries. The defendant failed to properly preserve this issue for appeal and now seeks review under *Evans*. *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). Since we have found error in the Dixwell Avenue incident and since the defendant concedes any enlargement in the Rock Road incident is harmless because of the specific evidence of the completed crime of sexual assault, we will confine ourselves to a consideration of the defendant's claim as it relates to the Putnam Avenue charge of burglary. The gravamen of the defendant's claim is that the instructions did not limit the crime underlying the burglaries to that of sexual assault but included the intent to commit any crime.

"[W]e only extend *Evans* review to a claimed enlargement in the charge, where it occurs, if it is accompanied by prejudice or lack of proper notice, in which instance it would involve a defendant's fundamental constitutional rights." *State* v. *Dahlgren,* 200 Conn. 586, 595, 512 A.2d 906 (1986). Not only did the information specify the underlying crime, but on at least two occasions the trial court instructed the jury that sexual assault was the intended crime. *Evans* is not available to allow review of this claim.

## IV

The defendant argues, in his fourth claim of error, that the prosecutor committed reversible error in his

closing argument by referring to the defendant's failure to testify.[8] Although this claim was not properly preserved below, the defendant seeks review under the *Evans* doctrine.

" 'Ordinarily, where a criminal defendant does not object and take exception to allegedly prejudicial remarks by the state's attorney, either at the time they were made or at the close of argument, he waives his right to press the claimed error on appeal. Where counsel fails to object or to request a curative charge "we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized." *State* v. *Tyler-Barcomb,* 197 Conn. 666, 673, 500 A.2d 1324 (1985). After carefully reviewing the record, we cannot say that the prosecutor's remarks . . . in this case were so abusive or prejudicial as to support a claim that the defendant has "clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans,* supra. The defendant has therefore waived his right to raise the claim on appeal. See *State* v. *Tyler-Barcomb,* supra,

---

[8] The prosecutor in his closing argument commented: "And the evidence points to the defendant. And there is the fingerprint that locks him in; *the fingerprint that can't be explained;* the fingerprint that puts him irrevocably in that house; the fingerprint that puts him in the room, in essence, with [the victim] and sexually molesting her and doing the other things that he did. This is what incriminates him. This is what they can't get out of.

"You heard their expert. No way could he take that out of that location and say it wasn't his fingerprint. No way did he have any right to be in that house. That's what you have to consider. That's proof beyond a reasonable doubt on all of this physical evidence, all of the things I've told you here, and the fact that that fingerprint is found in a place where that defendant was not authorized to be, had consent to be, or any right to be. And there's no evidence to the contrary, nothing. That fingerprint is in an authorized place, and that is the entrance and exit to where the perpetrator in this crime came in and went out. Having come in, the perpetrator of this crime abuses the victim and where he left, that's where we find the fingerprint. And that's why I submit to you it's proof beyond a reasonable doubt, because there's nothing that points to anything else, *nor can he explain the way that fingerprint was placed there.*" (Emphasis added.)

674.' (Citations omitted; footnotes omitted.) *State* v. *Chace,* 199 Conn. 102, 108, 505 A.2d 712 (1986)." *State* v. *Robinson,* 14 Conn. App. 146, 150, 539 A.2d 1037 (1988).

"*Evans* review has been denied where the claimed misconduct was not a pattern of conduct repeated throughout the trial and was not blatantly egregious. *State* v. *Bell,* 13 Conn. App. 420, 427, 537 A.2d 496 (1988)." *State* v. *Robinson,* supra, 150–51.

The record in this case does not support the defendant's theory of egregious behavior on the part of the prosecutor. This is not a case where the prosecutor continually harped on a particular aspect of the case. Instead, the prosecutor merely commented on the strength of its case and the weakness of the defendant's case. See *State* v. *Magnotti,* 198 Conn. 209, 220, 502 A.2d 404 (1985). Additionally, a review of the relevant part of the summation indicates that the jury would not have "naturally and necessarily" interpreted the argument as a comment on the defendant's failure to testify. *State* v. *Kluttz,* 9 Conn. App. 686, 705, 521 A.2d 178 (1987). Furthermore, *Evans* review may be afforded only "where the record adequately supports the claim that [the defendant] has been deprived of a fundamental constitutional right and a fair trial." *State* v. *Williams,* 204 Conn. 523, 536, 529 A.2d 653 (1985). The record here simply fails to support such a claim. See *State* v. *Chace,* supra, 108.

## V

The final claim of error is that the trial court erred in its charge to the jury addressing the state's burden of proof.[9] The defendant argues that the court's charge

---

[9] The trial court commented: "The defendant has no burden at all to prove his innocence in this case. He is innocent unless and until the State has proven him to be guilty. That is the burden which rests upon the state in this case, as in all criminal cases, the burden of proving to you, ladies and

diluted the state's burden of proving the defendant guilty beyond a reasonable doubt. We disagree.

The section of the charge relating to the burden of proof is practically identical to the standard charge which was approved in *State* v. *Ryerson,* 201 Conn. 333, 342 n.2, 514 A.2d 337 (1986). The trial court clearly explained the burden of proof in clear and concise terminology. Furthermore, the jury was instructed no less than eighteen times that the state had the burden of proving the defendant guilty beyond a reasonable doubt.

There is error only as to the sixth count charging the defendant with committing burglary in the second degree on Dixwell Avenue in Hamden, the judgment is set aside as to that count and the case is remanded with direction to render a judgment of acquittal thereon. There is no error as to the remaining counts.

In this opinion the other judges concurred.

---

gentlemen of the jury, that the accused is guilty beyond a reasonable doubt. In other words, proof by sufficient evidence to overcome the presumption of innocence on his part.

"Now the presumption of innocence requires that if a piece of evidence offered is capable of two constructions, one of which is consistent with innocence, it must be given that construction. However, the presumption of innocence on the part of the accused is not evidence. It has no probative force. It simply means that he stands here as an innocent man until it is found, if it is, that the State has proven him by sufficient evidence to be guilty beyond a reasonable doubt and has overthrown the presumption of innocence. The law says the State must not only prove him guilty but must prove him guilty beyond a reasonable doubt. It is not enough for the State to make out a case of even probable guilt but the burden of the State which never shifts is to prove the accused guilty beyond a reasonable doubt. It is not required that the State prove the defendant guilty beyond all possible doubt."