[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. FACTS
The petitioner was tried before a jury of six in the Judicial District of New Haven beginning on October 21, 1985. On October 30, 1985, the petitioner was found guilty of the charges of three (3) counts of burglary in the second degree, one count of unlawful restraint in the first degree, and one count of sexual assault in the first degree. The petitioner was sentenced on December 13, 1985, to a total effective sentence of twenty-five (25) years in the custody of the Commissioner of Corrections.
The petitioner appealed his conviction to the Appellate Court claiming that: 1) there was insufficient evidence to suppport his convictions, 2) the trial court erred in granting the state's motion for joinder in three cases and denying the petitioner's motion for severance, 3) the trial court erred in its instructions to the jury on the elements of burglary in the second degree and concerning the state's burden of proof, and 4) the trial court erred in permitting the prosecutor to comment on the petitioner's failure to testify. State v. Iovieno, 14 Conn. App. 710, 712,543 A.2d 766 (1988). The Appellate Court found error in part and remanded the case with direction to render judgment of acquittal on one count of burglary in the second degree. Id., at 726. On October 13, 1988, the trial court entered judgment of acquittal on one count of burglary in the second degree.
By way of an Amended Petition for Writ of Habeas Corpus, the petitioner has alleged that his present incarceration is illegal in that it was obtained in violation of his state and federal constitutional rights, the Connecticut General Statutes, and the rules of court as set forth in the Connecticut Practice Book. Specifically, the petitioner has alleged that certain items of evidence were illegally seized from both his person and his home in violation of the prohibitions against unreasonable searches and seizures enunciated in Article First, Section 7 of the Connecticut Constitution and the Fourth Amendment to the United States Constitution which was made applicable to the states through the Fourteenth Amendment. The petitioner has further alleged CT Page 1839 that the seizure of these items was also prohibited by Connecticut General Statutes Section 54-33a and Section 775 et seq. of the Connecticut Practice Book.
In a separate count, the petitioner has claimed that he was denied his rights to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article First, Section 8 of the Connecticut Constitution in that: 1) his trial counsel failed to move to suppress certain items of evidence, 2) his trial counsel failed to properly object to the admissibility of certain evidence, 3) his trial counsel failed to call a witness who would have impeached the testimony of one of the state's key witnesses, 4) his trial counsel failed to object to a prosecutorial comment on the petitioner's failure to testify on his own behalf, and 5) his trial counsel failed to object to an erroneous instruction to the jury.
II. ISSUES
Upon a two-day hearing of the matter, the petitioner has narrowed his claims to the following: (1) that his incarceration is illegal because his conviction for the crime of sexual assault was based upon evidence that was seized in violation of Article I, Section 7 of the Connecticut Constitution and the Fourth Amendment to the United States Constitution and (2) he was denied his state and federal constitutional rights to the effective assistance of counsel. III. Decision
At the outset, this Court is satisfied that the petitioner did not deliberately bypass the orderly procedure of direct appeal. Attorney Kent Drager, appellate counsel, testified convincingly that the issues of illegal search and seizure raised by the petitioner in the first six counts of the amended petition could not have been addressed on appeal because no motion to suppress was argued at the trial level, nor was there any adequate trial record otherwise made to address the claims. State v. Golding, 213 Conn. 233, 238-240
(1989); State v. Evans, 165 Conn. 61, 70-71 (1973).
The next question to be addressed is whether or not illegal search and seizure claims may be entertained and reviewed for the first time by way of habeas corpus. The United States Supreme Court has determined that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the [federal] Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure CT Page 1840 was introduced at his trial." Stone v. Powell, 428 U.S. 465,96 S.Ct. 3037, 49 L.Ed.2d 1067, 1080 (1976).
 The concurrence [in Stone v. Powell] argued that neither history, nor the purpose of the writ of prophylactic utility of the exclusionary rule as applied in Fourth Amendment claims, nor any sound reason relevant to the administration of justice justified a federal court, on collateral review of a state court conviction, to review asserted Fourth Amendment claims with the application of the exclusionary rule in precisely the same manner as it would or could have been utilized on direct review. 214. U.S. at 251, 93 S.Ct. 2041. The concurring opinion clearly distinguished between those claims which bear upon the guilt or innocence of an accused, such as a claim of ineffective assistance of counsel or some claimed violation of the privilege against self-incrimination, which should be cognizable under the traditional application of habeas principles, and those claims which rarely bear upon innocence, such as traditional Fourth Amendment claims.
Doleman v. Muncy, 579 F.2d 1258, 1261 (1978).
The petitioner urges this Court to reject the rationale of Stone. He urges that our Connecticut Constitution should be interpreted broadly enough to allow habeas review of illegal search and seizure claims based on the rationale set forth in State v. Marsala, 216 Conn. 150, 160 (1990).
The petitioner has not persuaded this Court to reject the holding in Stone v. Powell:
 [H]abeas review of search and seizure claims is rarely relevant to [the] reason [for habeas corpus: the affording of means, through an extraordinary writ, of redressing an unjust incarceration.] Prisoners raising Fourth Amendment claims collaterally usually are quite justly detained. The evidence obtained from searches and seizures is often `the clearest proof of guilt' with a very high content of reliability. Rarely is there any contention that the search rendered the evidence unreliable or that its means cast doubt upon the prisoner's guilt. The words of Mr. Justice Black drive home the point:
`A claim of illegal search and CT Page 1841 seizure. . .is crucially different from many other constitutional rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure and indeed often this evidence alone establishes beyond virtually any shadow of a doubt that the defendant is guilty.'
Kaufman v. United States, 394 U.S. at 237, 22 L.Ed. 227
(Black, J., dissenting). Schneckloth v. Bustamonte, 412 U.S. 218,36 L.Ed.2d 854, 880-881, 93 S.Ct. 2041 (1973).
Collateral attack of a criminal conviction by way of a habeas corpus petition conflicts with the strong interest in finality or judgments and interest in orderly trial procedure; thus, the petitioner bears a heavy burden of proof. Myers v. Manson, 192 Conn. 383 (1984). "In order to prevail in a habeas corpus challenge, `the petitioner "must demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal." (citations omitted)."' Sherbo v. Manson, 21 Conn. App. 172,180 (1990). Perhaps the case at bar raises the issues alluded to but unresolved by the Connecticut Supreme Court in Payne v. Robinson, 207 Conn. 565, 569 (n. 1, 1988).
The final question to be decided is whether or not the petitioner was denied his constitutional right to the effective assistance of counsel. Specifically, the petitioner claims that trial counsel's failure to argue a motion to suppress hairs taken from various parts of his body, including pubic hairs, and to suppress items of clothing that may have been illegally seized from his home coupled with counsel's failure to call a witness who may have impeached the testimony of one of the state's key witnesses, constituted ineffective assistance of counsel.
Addressing first the claim regarding counsel's failure to call Mr. Sisson, an investigator, to attempt to impeach the testimony of an officer who used a dog to track the scent of the alleged perpetrator of the sexual assault, the petitioner failed to sustain his burden of proof. Sisson was a reluctant witness, at best. He told trial counsel that he did not want to testify because if he did he might lose a valuable source of information that would assist in investigations generally. On the day he was called to testify, he told trial counsel that he had laryngitis and was unable to talk. Counsel then made a reasonable judgment call. He was afraid that if he put Sisson on the stand, he might not cooperate. Counsel, therefore, opted to proceed CT Page 1842 without his testimony. The dog handler testified that the dog tracked the scent of the perpetrator from the victim's house, through the rear yard to a point abutting the petitioner's property. Sisson's notes indicated that the police handler told him that the dog tracked the scent to a point where the handler assumed that the perpetrator entered an automobile. Counsel cross-examined the policeman extensively regarding those facts, but to no avail. Overall this Court cannot conclude that trial counsel's failure to call Sisson amounted to representation which "fell below an objective standard of reasonableness." Allion v. Meachum,211 Conn. 352, 357 (1989). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Williams v. Warden, 217 Conn. 419, 434 (1991) citing Strickland.
Petitioner's claims with regard to counsel's failure to argue Motions to Suppress Hairs and other evidence which may have been obtained illegally are meritorious. With regard to the hairs, the petitioner was under arrest and in custody when they were seized without a warrant. The sweatshirt that was seized was described differently in both the affidavit accompanying the search warrant and in the victim's statement. The shoe laces that were seized were not described with particularity in the warrant nor did they necessarily fit the description of a "cord" given by the victim. Consequently, because of the incriminating nature of the evidence in question, counsel's performance did fall below an objective standard of reasonableness. He should have argued Motions to Suppress.
Having decided that counsel's performance was sub-standard, can this Court then conclude with "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different [?]. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 3562,82 L.Ed.2d 864 (1984). The Court cannot reach that conclusion. Aside from the items that may have been suppressed, the jury had sufficient additional evidence from which to conclude beyond a reasonable doubt that the petitioner committed the sexual assault. Among the facts upon which the jury could have relied and which would have supported its conclusions are the following:
The victim's residence was described as being one-half block from the petitioner's [T. 357], about fifty (50) feet away. [T. 541]. The victim and her husband owned two cars, CT Page 1843 both of which were always parked in the driveway. They were garaged. [T. 399, 520, 526]. The victim's husband was away on business and his car was gone. [T. 357, 358]. The victim described the perpetrator as being 5'7" to 5'9" tall, stockyish, but not big-boned, hard and muscular, sporting a clipped beard and a mustache, having thick, wavy hair, wearing a jogging suit, consisting of a hooded sweatshirt with a drawstring and sweat pants, wearing soft-soled shoes or sneakers, weighing 170 to 180 lbs., wearing no jewelry and smelling of beer and smoke as though he had been in a bar. [T. 364, 365, 382, 411, 421]. The jury had the opportunity to observe the petitioner. The victim had seen the petitioner about two months prior to the crime when he helped her with items she had purchased and delivered them to her home. [T. 389, 390]. The petitioner then knew the victim's first name, "Marge". [T. 390]. The petitioner was a smoker. [T. 515]. Five to ten minutes before the perpetrator entered the victim's house at about 3:30 a.m. the victim received a phone call from a person who identified himself as "Billings" and who asked for the victim's husband by name. He also called the victim by name. [T. 358, 359, 399, 400]. A latent print of the petitioner's left thumb was lifted from the rear door to the victim's house. [T. 533, 537, 718]. The rear door was the point of entry by the perpetrator. [T. 359]. The petitioner gave a statement to the police officers after he was advised of his rights in which he admitted frequenting a bar the night before and the early morning hours of the day of the incident and drank beer. [T. 556; Respondent's Exhibit D]. A K-9 officer with a specially trained dog tracked the perpetrator's scent from the rear door of the victim's house to the petitioner's property. [T. 640-643].
Accordingly, the Court cannot conclude that even if the questionable evidence were suppressed the outcome of the trial would have been any different.
The Petition For Habeas Corpus is dismissed.
Scheinblum, J.