## NAPIER TALTON v. WARDEN, STATE PRISON (11055)

O'CONNELL, FOTI and SCHALLER, Js.

Argued October 1—decision released December 7, 1993

*James Moreno,* special public defender, for the appellant (petitioner).

*John A. East III,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Christopher A. Alexy,* assistant state's attorney, for the appellee (respondent).

FOTI, J. The petitioner appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. On appeal, the petitioner asserts that the habeas court improperly concluded that (1) he had failed to satisfy the relevant test for evaluating recantation testimony, (2) the acts or omissions of his trial attorney did not deny him his constitutional right to the effective assistance of counsel, and (3) the evidence of guilt presented at trial was overwhelming. We affirm the judgment of the habeas court.

On February 19, 1982, the petitioner was convicted of one count of sexual assault in the first degree and one count of being a persistent dangerous felony offender.[1] He was sentenced to a term of imprisonment of twenty-five years to life. Our Supreme Court affirmed the judgment of conviction. *State* v. *Talton,* 197 Conn. 280, 497 A.2d 35 (1985). On October 11, 1991, the petitioner filed a second amended petition for a writ of habeas corpus, in which he alleged that he is innocent, and that he had been denied his state

---

[1] The underlying facts of the petitioner's convictions are set forth in *State* v. *Talton,* 197 Conn. 280, 497 A.2d 35 (1985).

and federal constitutional rights to the effective assistance of trial counsel. The habeas court heard testimony on December 2, 3, 4 and 13, 1991, and made extensive factual findings in a memorandum of decision dated January 3, 1992, before dismissing the petition.

I

The petitioner first claims that the habeas court improperly concluded that the petitioner failed to satisfy the test for evaluating recantation testimony, as established by the United States Second Circuit Court of Appeals in *United States ex rel. Sostre* v. *Festa,* 513 F.2d 1313, 1317 (2d Cir.), cert. denied, 423 U.S. 841, 96 S. Ct. 72, 46 L. Ed. 2d 60 (1975). He argues that the habeas court improperly (1) found the victim's recantation testimony not credible and (2) concluded that the petitioner's due process rights were not violated.

The facts relevant to this issue are as follows. At the habeas hearing, the petitioner presented the testimony of the following witnesses: the victim; Derrick Washington; Willie Bowman; Daniel Presnick, the petitioner's trial counsel; and two expert witnesses. The state presented testimony from two witnesses: John Durham, the assistant state's attorney who had prosecuted the petitioner in 1982; and Joseph Zampano, an investigator with the state's attorneys' office.

The victim, who, at the time of the rape in 1981, was seventeen years old and the mother of a two year old son, gave testimony before the habeas court recanting her trial testimony. She testified that, contrary to her statements to the police and various other persons, and contrary to her testimony before the grand jury and at trial, the petitioner did not force her to engage in sexual intercourse. She testified that the petitioner, instead, had only touched her breast and kissed her without her permission. The victim testified that she

falsely accused the petitioner of forcing her to engage in nonconsensual sexual intercourse because his actions angered her and because at the time of the incident she considered such actions to constitute rape.

She also testified that, sometime prior to the 1982 trial, she went to the state's attorney's office to withdraw her complaint against the petitioner, but that someone there told her that she either had to press charges or go to jail for perjury. The victim testified that because she was afraid of going to jail and leaving her baby, she gave the testimony that she now recants. She further stated that she had not had any contact with the petitioner or his family since 1982, and that in the nine years since the trial the only persons to whom she admitted lying at the trial were the petitioner's habeas counsel and his investigator, who made an unsolicited visit to her on November 21, 1991. At that time, the victim gave them the following signed and sworn statement:

"I, [victim's name], of Poplar Street, New Haven, Connecticut, made the following statement of my own free will, without promise, threats or force: Napier Talton did not have sexual intercourse with me on the date in question. On the night of the alleged attack, all Mr. Talton did was kiss me and touch me."

The victim also testified that she had refused to sign a prepared statement offered to her by the petitioner's counsel, that she instead gave her own statement, and that she told the petitioner's counsel that she would not come to the habeas hearing. Ultimately, she testified that she appeared at the hearing only because her appearance had been compelled by a subpoena issued by the petitioner.

On cross-examination at the habeas hearing, the victim admitted that, at the time of the incident in 1981, she had gone to a neighbor's apartment and told the

neighbor that the petitioner had forced her to engage in sexual intercourse. She also admitted telling the police, the rape crisis center counselor, and a nurse at Yale-New Haven Hospital that the defendant had forced her to engage in intercourse. In addition, the victim testified that, contrary to her trial testimony, the petitioner had not removed her underwear. She denied being told that the gynecological examination conducted after the rape revealed the presence of sperm and said that the entire "rape kit" had gone directly to the police. She also conceded that she might have testified at trial that the petitioner fathered her second child as a result of the rape. At the habeas hearing, however, she denied that he was the child's father.

Further, on cross-examination the victim acknowledged that one week prior to the habeas hearing and subsequent to giving her statement to the petitioner's representatives, she spoke with Chris Alexy, the state's attorney handling this habeas action, and investigator Zampano. She did not tell them at that time that she had lied at trial. She claimed that she did not offer this important information because "[she] didn't feel like [she] had to." She also admitted that, at the same time, she told Alexy that there was "no way [she] wanted to see [the petitioner] out of jail, not after what he did to [me]."

The victim also testified on cross-examination, that the "legal aid assistant" and the petitioner's investigator assured her that she would not "get in trouble" if she recanted.[2] The victim testified further that she

---

[2] Counsel for the petitioner noted, prior to the victim's testifying, that perjury is a class D felony in Connecticut and that the statute of limitations for a class D felony is five years. "The trial took place in 1982. The five years would have expired in 1987. I do not think that there is any criminal liability to this witness, as a result." Regardless, the court appointed counsel for the victim to protect her rights and advise her of the possible consequences of her testimony.

did not remember telling Alexy during their meeting the previous week that the petitioner's trial counsel offered her money during the trial to "change her story." She also testified that she did not remember telling Alexy that she would not come to the habeas hearing to get the petitioner out of jail, but that she "would come up here to keep him in."

Upon examination by the habeas court, the victim admitted that, although she was angry with the petitioner for his actions, she did not want him to spend a long time in jail for what he had done. She had wanted "them to take him to jail right then and there and let him stay for a month or two, but [she] didn't want a life—[she] didn't even know he had life." She further testified: "I never heard no more about it. I didn't know this man had life until you said it this morning. But I never intended to put him in jail that long."

The petitioner also offered the testimony of Washington, a longtime friend of the victim's, and Bowman, the victim's boyfriend some years prior to the incident, to corroborate the defendant's innocence and the victim's recantation. Both witnesses possessed criminal records.

The habeas court, in considering *Sostre,* recognized that it established a three-pronged test to determine if a witness's recantation necessitates a new trial. The test requires that the habeas court (1) be reasonably well satisfied that the trial testimony is false, (2) find that the jury might have found the petitioner not guilty without the testimony at issue, and (3) conclude that the petitioner was surprised by the false testimony and was not able to meet it or did not know of its falsity until after the trial. *United States ex rel. Sostre* v. *Festa,* supra.

The habeas court in this case concluded that the petitioner had not satisfied either the first or third prong

of the *Sostre* test. The court found that the victim's testimony at the habeas proceeding lacked credibility. Further, the petitioner was not taken by surprise at the trial by the victim's "false" testimony because "the petitioner's defense [at trial] was that the victim was lying and his counsel's strategy was to establish inconsistencies in [the victim's] statements and testimony together with inconsistencies between her testimony and the evidence . . . ." In addition, the habeas court found that an overwhelming amount of corroborating evidence was produced during the grand jury proceeding and at trial.

The petitioner asks that we adopt the *Sostre* test and reverse the decision of the habeas court and find its conclusion, that the victim's recantation was not credible, to be clearly erroneous because it is not supported by the record. The parties agree that we are not bound by *Sostre*.

Contrary to the parties' assertions, our Supreme Court has addressed this issue. The court articulated the following conditions under which a petition for a new trial should or may be granted on the grounds of newly discovered evidence, i.e., recantation: " '(a) The court is reasonably well satisfied that the testimony given by a material witness is false. (b) That without it the jury might have reached a different conclusion. (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.' " *Pradlik* v. *State,* 131 Conn. 682, 687, 41 A.2d 906 (1945), quoting *Larrison* v. *United States,* 24 F.2d 82, 87–88 (7th Cir. 1928). This test is identical to the one articulated in *Sostre.* We conclude, therefore, that the habeas court applied the correct analysis.[3]

---

[3] The state has also questioned whether newly discovered evidence in the form of the victim's recantation testimony is proper grounds for habeas

As we have recently stated, "[i]n a habeas appeal, we cannot and will not disturb underlying historical facts found by the habeas court unless they are clearly erroneous. *Siano* v. *Warden,* 31 Conn. App. 94, 95, 623 A.2d 1035, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993); *Copas* v. *Warden,* 30 Conn. App. 677, 682, 621 A.2d 1378, cert. denied, 226 Conn. 901, 625 A.2d 1374 (1993). We determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. *Siano* v. *Warden,* supra; *Copas* v. *Warden,* supra. We do not examine the record to see if the trier of fact could have reached a contrary conclusion. *Siano* v. *Warden,* supra; *Copas* v. *Warden,* supra." *Davis* v. *Warden,* 32 Conn. App. 296, 301, 629 A.2d 440, cert. denied, 227 Conn. 924, 632 A.2d 701 (1993).

The habeas court reasonably found that the victim's testimony at the habeas corpus proceeding lacked credibility. The court concluded that it was unbelievable that the victim, who had been sexually active from the age of eleven or twelve, and who was already the mother of one child at the time of the sexual assault, could claim that when the petitioner touched her breast and kissed her without consent, she believed that he had raped her. Further, the court found that "her motive for attempting to convince the habeas trier that she lied in 1982," was apparently that she felt sorry "that Talton is serving so lengthy a sentence as a result of her prosecution."

corpus relief. A recantation of material testimony likely to affect the verdict rises to the level of a due process violation. Due to the lapse of time, it may be raised only by a petition for a writ of habeas corpus, which may be the only vehicle available for a petitioner to establish a miscarriage of justice. See *Safford* v. *Warden,* 223 Conn. 180, 190–91, 191 n.13, 612 A.2d 1161 (1992).

It is for the habeas court, as the fact finder in this case, to determine the credibility and the effect to be given the testimony. *Siano* v. *Warden,* supra, 104; *State* v. *Grant,* 177 Conn. 140, 142, 411 A.2d 917 (1979). "[I]t is the court's right to consider evidence, draw logical deductions and make reasonable inferences from the facts proven." *State* v. *Rivera,* 30 Conn. App. 224, 231, 619 A.2d 1146, cert. denied, 225 Conn. 913, 623 A.2d 1024 (1993). We cannot retry the matter, nor can we pass on the credibility of a witness. *State* v. *Myers,* 193 Conn. 457, 473, 479 A.2d 199 (1984). The habeas court was in the best position to observe the witnesses, to determine their motivations for testifying, and to pass on the credibility of each. The facts as set forth in the memorandum of decision are supported by the evidence; we cannot conclude that those findings are clearly erroneous. We conclude, therefore, that the habeas court could have reasonably determined that the victim's trial testimony was not false.

Since we have determined that the court did not act unreasonably in finding that the victim's recantation lacked credibility, it follows that the petitioner has failed to meet the first prong of the *Pradlik* test. We, therefore, find it unnecessary to discuss the court's ruling on the third prong of the test—whether the petitioner was taken by surprise when the allegedly false testimony was given at trial. Nor do we need to address the petitioner's claim that the habeas court improperly found that there was an overwhelming amount of evidence corroborating the victim's original testimony produced during both the grand jury proceeding and the trial.[4]

---

[4] We note our Supreme Court's description of "the overwhelming nature of the evidence which corroborated the complainant's testimony." *State* v. *Talton,* 197 Conn. 280, 291, 497 A.2d 35 (1985).

## II

The petitioner also claims that the habeas court improperly concluded that he was not denied his state[5] and federal constitutional rights to the effective assistance of counsel. He argues that his trial counsel (1) failed to conduct an adequate pretrial investigation, (2) did not investigate or produce certain witnesses at trial, and (3) neglected to impeach the victim with her grand jury testimony. The habeas court concluded that the petitioner did not prove that the failure of his trial counsel to interview certain witnesses fatally prejudiced him, or that a different verdict would have resulted had he attempted to impeach the victim at trial with her grand jury testimony.

The petitioner's trial counsel, Daniel Presnick, testified at the habeas proceeding. Presnick testified that his primary theory at trial was that there were discrepancies in the victim's testimony that contradicted other evidence. He attempted to highlight these inconsistencies and thereby to raise a reasonable doubt as to the petitioner's guilt. The thrust of Presnick's strategy was to attack the victim's credibility. He testified that the petitioner had wanted him to advance a theory that the victim "was deliberately fabricating as a result of some sort of romantic motive which never really panned out, or as a result of an extortion to collect money." He pointed out to the petitioner that the latter theory was not credible since the petitioner had very little money. Presnick testified that he did call a witness who testified that he saw the petitioner and the victim "holding hands and looking as if they might have had a romantic relationship."

---

[5] The petitioner has not provided an independent analysis for his state constitutional claim; therefore, we will not review it. *State* v. *Glenn,* 30 Conn. App. 783, 785 n.3, 622 A.2d 1024 (1993).

Presnick testified that, in preparing to cross-examine the victim, he reviewed the grand jury minutes, his notes, the petitioner's statements, and information that had been gathered by the public defender's office. He testified that he believed he had spoken with several members of the petitioner's family. He also interviewed the *victim's* brother, who was incarcerated at the time, because the petitioner claimed that the brother could provide exculpatory information. Presnick testified that the victim's brother seemed afraid of the petitioner and offered only ambiguous answers during their interview. Presnick decided not to call the brother because he felt that the brother would not be a helpful witness and he was not confident that the brother was a witness he "could put on the stand and not be surprised by." Sometime during the course of the trial, the petitioner complained to the court that the victim's brother had provided an exculpatory affidavit, and the petitioner asked the court to compel the brother's appearance and testimony. The trial court denied the request because it noted that the purported affidavit was in the petitioner's handwriting and unsigned.

Presnick also testified that the petitioner provided him with a list of several other possible witnesses who the petitioner claimed could provide testimony damaging to the victim's character and veracity. Among these witnesses were Washington, Bowman, John Manley and England Gambel. Presnick testified that he turned over this information to his investigator, but that he eventually decided not to interview the possible witnesses himself or present their testimony at trial because of their lengthy criminal records. In fact, all of these possible witnesses were incarcerated at the time of trial. Presnick was convinced that because of their extensive criminal records they would have no credibility with the jury. He feared any attempt to impugn the victim's credibility through the testimony

of these men would only increase the jury's sympathy for the victim. Presnick also was concerned that the testimony of the possible witnesses would disclose the petitioner's extensive criminal record. He and the petitioner had already decided that the petitioner would not testify for that reason.

The right to counsel, as guaranteed by the United States constitution and the Connecticut constitution, means the right to the effective assistance of counsel. *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "That right to counsel, however, is the right to effective assistance and not the right to perfect representation." *Siano* v. *Warden,* supra, 97. "Our Supreme Court has adopted the two-pronged analysis of *Strickland* v. *Washington,* supra, to determine if counsel's assistance was ineffective. *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 455, 610 A.2d 598 (1992); *Sekou* v. *Warden,* 216 Conn. 678, 690, 583 A.2d 1277 (1990). Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice. *Bunkley* v. *Commissioner of Correction,* supra; *Hull* v. *Warden,* 32 Conn. App. 170, 174, 628 A.2d 32 (1993); *Siano* v. *Warden,* supra.

"To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [he] was not functioning as the counsel guaranteed the [petitioner] by the Sixth Amendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered

sound trial strategy. . . . *Siano* v. *Warden,* supra; *Hull* v. *Warden,* supra; *Copas* v. *Warden,* supra, 683–84.

"To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . *Siano* v. *Warden,* supra, 98; *Bunkley* v. *Commissioner of Correction,* supra, 454–55." (Citations omitted; internal quotation marks omitted.) *Davis* v. *Warden,* supra, 303.

The habeas court concluded that the petitioner failed to satisfy the second prong of *Strickland.* Our review of the whole record leads us to conclude that it cannot reasonably be said that the habeas court's determination was not legally and logically supported. Two of the four possible witnesses testified before the habeas court and were not found to be convincing. We disagree that the record supports the petitioner's claim that he established that "but for" the failure of his trial attorney to interview or investigate the testimony of the possible witnesses or to present their testimony, the jury probably would have reached a different verdict.

The petitioner also claims that the habeas court improperly concluded that he was not prejudiced by his trial attorney's failure to utilize the victim's grand jury testimony to impeach her trial testimony. He further claims that the habeas court improperly concluded that the trial testimony was highly consistent with the grand

jury testimony. Our review of the record leads us to conclude that the findings of the habeas court were not clearly erroneous and that any inconsistencies that may have been present between the two testimonies were minor, inconsequential, and nonprobative of the issue of credibility.

We, therefore, conclude that the evidence supports the habeas court's finding that the petitioner failed to establish prejudice even assuming that he had successfully established a deficient performance by trial counsel.

The judgment is affirmed.

In this opinion the other judges concurred.