******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# GEORGE M. GOULD *v.* COMMISSIONER OF CORRECTION
## (AC 35093)

DiPentima, C. J., and Alvord and Foti, Js.

*Argued May 19—officially released September 15, 2015*

(Appeal from Superior Court, judicial district of Tolland, Sferrazza, J.)

*Damon A. R. Kirschbaum*, with whom, on the brief, was *Vishal K. Garg*, for the appellant (petitioner).

*Melissa Patterson*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *John Waddock*, supervisory assistant state's attorney, *Angela R. Macchiarulo*, senior assistant state's attorney, and *Marcia Pillsbury*, assistant state's attorney, for the appellee (respondent).

*Opinion*

FOTI, J. The petitioner, George M. Gould, appeals from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus, following remand from our Supreme Court. See *Gould* v. *Commissioner of Correction*, 301 Conn. 544, 571, 22 A.3d 1196 (2011). The petitioner's habeas claims focus on the allegedly perjured testimony of a witness at his criminal trial. On appeal, the petitioner claims that the habeas court's factual findings are clearly erroneous. We affirm the judgment of the habeas court.

This matter has a lengthy and complex procedural history. Following a jury trial, the petitioner and his now deceased codefendant, Ronald Taylor, were found guilty of felony murder, robbery in the first degree, criminal attempt to commit robbery in the first degree, and conspiracy to commit robbery in the first degree. See *State* v. *Gould*, 241 Conn. 1, 3, 695 A.2d 1022 (1997). On direct appeal, our Supreme Court concluded that the jury reasonably could have found the following facts:

"On July 4, 1993, at approximately 5:35 a.m., [the petitioner and Taylor] entered La Casa Green, a retail store, on Grand Avenue in New Haven. The owner, Eugenio Vega, had opened the store shortly after 5 a.m. and was the only person in the store. [The petitioner and Taylor] tied up Vega's hands with electrical cord, placed him in the store's cooler, and fatally shot him in the head. [The petitioner and Taylor] took money and jewelry from Vega's safe and searched through Vega's wallet.

"The state's principal witness was Doreen Stiles.[1] She testified that after she observed [the petitioner] enter the store, she hid in the alleyway next to the store. From her hiding place, Stiles heard the voices of three people arguing in the store, including Vega, who was screaming. She distinctly heard Vega and [the petitioner and Taylor] arguing about money and opening the safe. After a couple of minutes, Stiles heard a single gunshot. She then observed both [the petitioner and Taylor] leave the store." Id., 5.

The jury found the petitioner and Taylor guilty. The trial court, *Fracasse, J.*, rendered judgment in accordance with the jury's verdict and sentenced each of the men to a total effective term of eighty years incarceration. Id., 4. The petitioner appealed his conviction directly to our Supreme Court, which affirmed the petitioner's conviction. Id., 24.

Thereafter, in October, 2003, the petitioner filed a petition for a writ of habeas corpus. In his petition, he alleged that he had received ineffective assistance from his trial counsel, and that he was actually innocent. The petitioner predicated his claim of actual innocence on Stiles' recantation of her trial testimony to Gerry O'Donnell, an investigator for the Public Defender's Office.

At the first habeas trial in August, 2009, the petitioner called Stiles to testify on his behalf. As recounted by the second habeas court, Stiles specifically indicated that she had fabricated the entirety of her criminal trial testimony, and that she had provided her statement to police after being detained during a prostitution sweep. Stiles, a heroin addict, began to suffer withdrawal symptoms during the several hours of questioning. She testified that detectives refused to release her until she told them what they wanted to hear, and that they informed her that they would drive her to buy heroin if she confirmed that she was at the scene when the homicide occurred. She further testified she was never at La Casa Green at the time of the homicide, and had identified the petitioner and Taylor from a photographic array based on implicit body language given by the detectives. See *Gould* v. *Commissioner of Correction*, supra, 301 Conn. 554.

Stiles acknowledged that she had never told anyone that she had lied about events during the criminal trial until she was approached by O'Donnell some time after the petitioner's conviction. O'Donnell initially interviewed Stiles while she was convalescing in a nursing home, at which time she reiterated the version of events she testified to at the criminal trial. O'Donnell, however, later obtained a written and signed statement from Stiles in which she recanted her trial testimony.

On the basis of Stiles' testimony at the first habeas trial, the habeas court, *Fuger, J.*, concluded that her recantation rendered the entirety of the petitioner's conviction improper. See *Gould* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. CV05-4000409 (March 17, 2010). Judge Fuger noted that the case "rises and falls on the testimony of [Doreen] Stiles." (Internal quotation marks omitted.) *Gould* v. *Commissioner of Correction*, supra, 301 Conn. 551. He concluded that "[w]hat is not proven is that it was [the petitioner] who committed this crime. There was no fingerprint evidence, there was no murder weapon recovered, there were no fruits of the crime recovered and there was no DNA evidence at the crime scene that in any way linked the [petitioner] to this crime. . . . [Stiles'] statement [was] the keystone of the evidence upon which these convictions rest." (Internal quotation marks omitted.) Id., 556. As Stiles was the only witness to observe the petitioner enter the store, the first habeas court found that her testimony was the only real evidence of the petitioner's guilt. See id., 549. Judge Fuger concluded that the petitioner was entitled to relief on the basis of actual innocence, and as a consequence he granted the petition for a writ of habeas corpus. The respondent, the Commissioner of Correction, appealed from that judgment to our Supreme Court.

In *Gould* v. *Commissioner of Correction*, supra, 301

Conn. 566–71, our Supreme Court held that the habeas court had failed to apply the appropriate test for actual innocence, and remanded the case for a new habeas trial. The court stated that the petitioner, after being convicted, was no longer protected by the presumption of innocence. Id., 567. Under the test for actual innocence articulated in *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 700 A.2d 1108 (1997), the petitioner was required to adduce evidence that demonstrated he was not guilty. *Gould* v. *Commissioner of Correction*, supra, 566–67. The court noted that although Stiles' perjury entirely undermined the state's case, it did not satisfy the petitioner's burden to prove his innocence. Id. The court also noted that the petitioner had not claimed on appeal that the use of perjured testimony was an independent due process violation, and afforded him the opportunity to amend his habeas petition to advance that claim on remand. Id., 569–71.

In his second amended petition filed on November 10, 2011, the petitioner alleged that he was actually innocent and that the use of perjured testimony by the state constituted a violation of his due process rights to a fair trial.[2] Following a second habeas trial, the second habeas court, *Sferrazza, J.*, found that the petitioner had not proven that he was actually innocent. It further found that Stiles did not commit perjury at the criminal trial, and as a consequence, the petitioner was not deprived of a fair trial. Judge Sferrazza based that conclusion in part on Stiles' subsequent disavowal of her recantation before the start of the second habeas trial.

Judge Sferrazza found that on July 6, 2011, Stiles told Tony Reyes, a detective sergeant with the New Haven Police Department, that her criminal trial testimony was accurate. Stiles claimed that O'Donnell elicited her recantation through a combination of threats of prosecution and gifts, as well as an implied promise that she would receive a portion of any monetary damages awarded to the petitioner for his wrongful incarceration. When O'Donnell stopped contacting Stiles after she testified at the first habeas trial, she decided to inform Reyes that her recantation was false. Stiles subsequently repeatedly switched between the two stories to various individuals, asserting that one or the other was true.

At the second habeas trial, the habeas court examined the recording of Stiles' original criminal trial testimony. When called to testify at the second habeas trial, Stiles exercised her fifth amendment privilege against self-incrimination and refused to testify. O'Donnell initially testified on behalf of the petitioner at the second habeas trial, but when recalled to provide further testimony regarding Stiles, he also invoked his privilege against self-incrimination. The habeas court also heard live testimony from Mary Boyd and Pamela Youmans, both

of whom Stiles testified to seeing at La Casa Green. Although Boyd testified that she did not see Stiles at La Casa Green, Youmans testified to observing her before the shooting.[3]

The habeas court concluded that the petitioner failed to demonstrate that Stiles had lied during the criminal trial. The court considered the recording of her criminal trial testimony and noted that her demeanor was calm and assured, and that she did not appear evasive or hesitant. Judge Sferrazza also credited Stiles' criminal trial testimony about the location and actions of both Youmans and Boyd about the time of the homicide as indicia that she was present at La Casa Green. The court noted that the only other means by which Stiles could have known of those witnesses was to have been deliberately fed information by the investigating detectives. The court concluded that the petitioner failed to adduce evidence that the detectives did so.

The court further weighed O'Donnell's gifts and promises of monetary compensation to Stiles and found that they undermined the validity of the recantation he had extracted, and by extension, the truthfulness of Stiles' testimony at the first habeas trial. The court specifically noted that it believed that a tape recording provided by O'Donnell during the first habeas trial, which he claimed contained Youmans' recantation, likely was fake, noting that the discrepancies in Youmans' manner and dialect of speech and the person on the recording gave credibility to her claim that she was not speaking on the tape. The court further drew an adverse inference against O'Donnell's credibility due to his assertion of his fifth amendment right not to testify in accordance with *Rhode* v. *Milla*, 287 Conn. 731, 949 A.2d 1227 (2008).[4]

On the bases of these factual findings, the habeas court concluded that the petitioner had failed to demonstrate that Stiles had perjured herself during the criminal trial, and that as a consequence his due process claim failed.[5] The second habeas court denied the petitioner's second amended petition but granted his petition for certification to appeal the court's judgment. On appeal, he claims that the habeas court's finding that Stiles did not commit perjury at the criminal trial was clearly erroneous.[6]

Pursuant to General Statutes § 53a-156, a person commits perjury when "in any official proceeding, such person intentionally, under oath . . . makes a false statement, swears, affirms or testifies falsely, to a material statement which such person does not believe to be true." "The question of whether a witness perjured [herself] is a factual finding, which we review under the clearly erroneous standard. . . . When the factual basis of the court's decision is attacked, [w]e are called upon to determine whether the facts set out in the memorandum of decision are supported by the evidence

or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . Our function is not to examine the record to see if the trier of fact could have reached a contrary conclusion. . . . The United States Court of Appeals for the Second Circuit has made clear that in order to determine whether perjury occurred, the court must weigh all the evidence of perjury before it, including but not limited to the recantation . . . . Thus, the court must go beyond the recantation to review other independent evidence bearing on whether there was perjury at trial." (Citations omitted; internal quotation marks omitted.) *Walker* v. *Commissioner of Correction*, 103 Conn. App. 485, 498–99, 930 A.2d 65, cert. denied, 284 Conn. 940, 937 A.2d 698 (2007); see also *Ortega* v. *Duncan*, 333 F.3d 102, 107–108 (2d Cir. 2003).

"The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight given to their testimony." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012). "[A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 121 Conn. App. 295, 298–99, 995 A.2d 641, cert. denied, 297 Conn. 920, 996 A.2d 1192 (2010).

The second habeas court noted in its memorandum of decision that, given Stiles' various stories, determining whether she perjured herself during the criminal trial "poses a true dichotomy." Stiles testified in the criminal trial as to what she had observed at La Casa Green, and testified at the habeas trial that she was never there. Any resolution by the habeas court of this factual tension results in the conclusion that Stiles presented perjured testimony; either Stiles lied at the criminal trial and told the truth at the habeas trial, or she told the truth at the criminal trial and lied at the habeas trial. The question before the habeas court was not whether Stiles lied, but *when*.

The petitioner initially argues that certain alleged discrepancies between Stiles' various testimonies were not addressed by the second habeas court, which demonstrates that the court did not undertake a sufficiently probing review of the evidence. The petitioner notes that our Supreme Court has required us to "undertake a more probing factual review when a constitutional question hangs in the balance." *State* v. *Clark*, 297 Conn.

1, 7, 997 A.2d 461 (2010). The petitioner argues that because the habeas court did not sufficiently analyze the evidence, we should not provide our customary deference to the fact finder and instead essentially review the facts of this case *de novo*. We decline to adopt the petitioner's view.

The petitioner has not convinced us to break with our customary deference to the finder of fact. Although our Supreme Court has applied a stricter standard of review to factual findings when a constitutional issue turns upon those findings, the court has merely required that we conduct "a scrupulous examination of the record to ascertain whether such a finding is supported by substantial evidence." (Internal quotation marks omitted.) *State* v. *Damon*, 214 Conn. 146, 154, 570 A.2d 700, cert. denied, 498 U.S. 819, 111 S. Ct. 65, 112 L. Ed. 2d 40 (1990). Our Supreme Court has further qualified the examination required by noting that "[n]otwithstanding our responsibility to examine the record scrupulously, it is well established that we may not substitute our judgment for that of the [fact finder] when it comes to evaluating the credibility of a witness. . . . It is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony. . . . Questions of whether to believe or disbelieve a competent witness are beyond our review." (Internal quotation marks omitted.) *State* v. *DeMarco*, 311 Conn. 510, 519–20, 88 A.3d 491 (2014). Our Supreme Court has *never* instructed this court to discard its traditional deference to the habeas court's credibility determinations as part of scrupulous review. In this case, where Stiles' credibility is the central factual question, we review the habeas court's factual findings to determine whether they are clearly erroneous and find support within the record.

Our scrupulous review of the record leads us to conclude that the habeas court's finding that Stiles did not perjure herself at the time of the criminal trial was not clearly erroneous. The habeas court acted well within its discretion to analyze and credit Stiles' criminal trial testimony. The court engaged in a thorough analysis of Stiles' demeanor and candor, and provided a detailed rationale for concluding that her criminal trial testimony was credible. That rationale not only included Stiles' demeanor during her testimony, but also the substance of her testimony, which corroborated details provided by Boyd and Youmans.

Furthermore, we agree with the habeas court's conclusion that Stiles' recantation, and by extension, testimony at the first habeas trial, lacked credibility, particularly due to the tainted source from which it emerged—O'Donnell. The habeas court's conclusions about O'Donnell's actions—namely, that he provided gifts and promises of monetary compensation to Stiles

and that he made a bogus tape recording of Youmans—resulted in the appropriate use of an adverse inference against him. As the individual solely responsible for Stiles' recantation, his suspect credibility undermined whatever value the recantation had in the context of her ever changing recitation of events.

The petitioner argues that Stiles' recantation of her criminal trial testimony during the first habeas trial clearly indicates that her criminal trial testimony lacks credibility. He further argues that Judge Fuger was able to hear Stiles' recantation testimony live and in-person, whereas Judge Sferrazza was only able to observe the video recording of the criminal trial and the transcripts of the first habeas trial. As a consequence, the petitioner argues, we should defer to Judge Fuger's factual findings in the present case and conclude that the second habeas court's findings were clearly erroneous. The petitioner has presented no authority to support his argument.

As our Supreme Court noted upon its review of the first habeas trial, "[a]ppellate courts never act as finders of fact. . . . When a witness presents conflicting testimony, a question of credibility arises that must be assessed by the trier of fact." (Citations omitted.) *Gould* v. *Commissioner of Correction*, supra, 301 Conn. 566. Judge Sferrazza did not base his factual findings purely on the testimony of Stiles. The second habeas court was in the position to evaluate all of the evidence provided in the present case, some of which was *not before the first habeas court*, specifically, the testimony regarding O'Donnell's alleged inducement of Stiles' recantation and her subsequent disavowal of that recantation. We will not second-guess the fact finder merely because another fact finder, with different evidence related to the same events, came to a different conclusion. Such an act is beyond our purview.

The habeas court characterized Stiles' memory of events as "mercurial and even mercenary." It is clear from the record that Stiles has repeatedly changed her story depending upon who was listening and what was at stake for her. The habeas court is best placed to weigh Stiles' contradictory stories and consider the credibility of her recantations in the context of the three trials, especially in light of O'Donnell's interference. The court concluded that Stiles' testimony subsequent to the criminal trial carried little persuasive weight, and concluded that certain aspects of Stiles' criminal trial testimony were indicative of truthfulness, particularly that which was consistent with the testimony of Boyd and Youmans. Merely recanting earlier testimony does not automatically make such testimony false. The petitioner has not adduced any evidence, beyond that of a suspect initial recantation that has in turn been disavowed, which would demonstrate that Stiles knowingly lied during the criminal trial.

In this case, where Stiles changed her story frequently, it is for the trier of fact to determine which story is credible and the effect to be given the testimony. *Talton* v. *Warden*, 33 Conn. App. 171, 179, 634 A.2d 912 (1993), aff'd, 231 Conn. 274, 648 A.2d 876 (1994). The habeas court articulated numerous valid reasons to consider Stiles' criminal trial testimony credible and her testimony at the first habeas trial false. The petitioner has failed to show how those reasons are unsupported by the evidence. We therefore conclude that the petitioner has failed to demonstrate that the habeas court's finding that Stiles did not perjure herself at the criminal trial was clearly erroneous, and as a consequence his claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At the time of the petitioner's criminal trial, Stiles was hospitalized. As a consequence, her testimony was recorded at the hospital, with the judge, counsel for the parties, a court monitor, the petitioner, and Taylor present. The hospital testimony included a full cross-examination, and was edited so that when played for the jury it included no testimony that had been excluded by way of objection.

[2] The petitioner also alleged a claim of ineffective assistance of counsel, which is not before this court on appeal.

[3] This testimony was substantially the same as their testimony at both the first habeas trial and the criminal trial.

[4] "[I]t is settled law in other jurisdictions that a nonparty's invocation of the fifth amendment privilege against self-incrimination [in a civil proceeding] is admissible evidence so long as it does not unduly prejudice a party to the case. . . . In making this determination, factors that courts should consider include: (1) the [n]ature of the [r]elevant [r]elationships . . . [as] invariably . . . the most significant circumstance, examined . . . from the perspective of a non-party witness' loyalty to the [petitioner] or [respondent] as the case may be; (2) the [d]egree of [c]ontrol of the [p]arty [o]ver the [n]on-[p]arty [w]itness, such as whether the assertion of the privilege may be viewed as a vicarious admission; (3) the [c]ompatibility of the [i]nterests of the [p]arty and [n]on-[p]arty [w]itness in the [o]utcome of the [l]itigation . . . and (4) the [r]ole of the [n]on-[p]arty [w]itness in the [l]itigation, such as [w]hether the non-party witness was a key figure in the litigation and played a controlling role in respect to any of its underlying aspects . . . ." (Citations omitted; internal quotation marks omitted.) *Rhode* v. *Milla*, supra, 287 Conn. 737–39.

[5] The habeas court also concluded that the petitioner had not proven his actual innocence. The petitioner has not raised a claim challenging that conclusion on appeal.

[6] The petitioner also claims that the habeas court applied the wrong legal test when determining whether the use of perjured testimony constituted a due process violation. As we conclude that the habeas court's finding that Stiles did not commit perjury at the criminal trial was not clearly erroneous, we need not address this claim.